Lee Wayne Lawrence v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-305-CR

LEE WAYNE LAWRENCE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Lee Wayne Lawrence appeals his convictions for possession of a prohibited weapon and two counts of aggravated assault.  After a jury found Lawrence guilty on all counts, the trial court assessed his punishment at twenty-five years’ confinement on the possession of a prohibited weapon count and forty years’ confinement, to be served concurrently, on each of the aggravated assault counts.  In two points, Lawrence contends that (1) Texas Code of Criminal Procedure 46B.004 applies to him and required the trial court on its own motion to conduct a competency inquiry
 and (2) the evidence is legally and factually insufficient to establish that the PVC pipe bomb Lawrence possessed was an explosive weapon designed, made, or adapted for the purpose of inflicting bodily injury, death, or substantial property damage.  We will affirm.

II.  Factual Background

On December 7, 2002, Lawrence dressed in full military fatigues and went to a gentleman’s club where his daughter was working.  He brandished a Bowie knife with a nine-inch blade and threatened to blow up the club with a pipe bomb he wore on a chain around his neck.  Lawrence eventually surrendered to the police after he poured out the contents of the PVC pipe bomb—rusted nails, screws, shotgun shot, and shotgun powder. 

III.  Competency To Stand Trial

In his first point, Lawrence argues that article 46B of the code of criminal procedure governs the determination of whether he was competent to stand trial, not former article 46.02, and that the trial court failed to comply with the requisites of article 46B by failing to 
sua sponte 
conduct an informal inquiry into his competency.  
Tex. Code Crim. Proc. Ann.
 art. 46B (Vernon Supp. 2004-05).  The State argues that former article 46.02 applies to the determination of whether Lawrence was competent.  Effective January 1, 2004, the legislature repealed code of criminal procedure article 46.02 and replaced it with article 46B.  
See 
Act of April 30, 2003, 78
th
 Leg., R.S., Ch. 35, §§ 15-17, 2003 
Tex. Gen. Laws 
57, 72 (current version at 
Tex. Code Crim. Proc. Ann.
 art. 46B (Vernon Supp. 2004-05)).  Section 16 of the Act of April 30, 2003 provides,

The change in law made by this Act applies only to a defendant against whom proceedings have not been initiated under Article 46.02, Code of Criminal Procedure, before the effective date of this Act.  The determination of incompetency for a defendant against whom proceedings have been initiated under Article 46.02, Code of Criminal Procedure, before the effective date of this Act is covered by the law in effect when the proceedings were initiated, and the former law is continued in effect for this purpose.

Id.
  The State contends that proceedings were initiated against Lawrence when the indictment charging him was filed, that is, on August 6, 2003.  The “proceedings” referenced by the legislature in section 16 of the Act, however, are specifically identified as competency proceedings—“proceedings . . . under Article 46.02”—not criminal proceedings generally.  
Id.
  Because no competency proceedings were initiated in this case prior to January 1, 2004, we hold that article 46B of the code of criminal procedure applies to Lawrence.  
See Richardson v. State
, No. 01-04-00281-CR, 2005 WL 267708, at *1-2 (Tex. App.—Houston [1st Dist.] Feb. 3, 2005, no pet.) (mem. op.) (applying Chapter 46B to case in which court inquired into appellant’s competence before accepting his guilty plea at hearing held on January 26, 2004).
  
But see Myers v. State
, No. 06-04-00033-CR, 2004 WL 2214081, *1 n.1 (Tex. App.—Texarkana Oct. 5, 2004, no pet.) (mem. op.) (applying repealed article 46.02 because “the proceedings were originally initiated in this matter by the filing of the indictment” but noting that both parties agreed that article 46.02 applied).

We review a trial court’s decision not to conduct a competency hearing for an abuse of discretion.  
See Moore v. State
, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999), 
cert. denied
, 530 U.S. 1216 (2000).  A trial court abuses its discretion if its decision is arbitrary or unreasonable.  
Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Article 46B.004 is titled “Raising Issue of Incompetency to Stand Trial” and provides,

(a) Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial.  A motion suggesting that the defendant may be incompetent to stand trial may be supported by affidavits setting out the facts on which the suggestion is made.

(b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

(c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.

(d) If the court determines there is evidence to support a finding of incompetency, the court, except as provided by Article 46B.005(d), shall stay all other proceedings in the case.

Tex. Code Crim. Proc. Ann.
 art. 46B.004.  If, under subsection (b), evidence comes to the trial court’s attention suggesting that the defendant may be incompetent to stand trial, then, under subsection (c), the trial court is required to determine by informal inquiry whether there is some evidence that would support a finding that the defendant may be incompetent to stand trial.  
Id. 
A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him.  
Id.
 art. 46B.003(a).  If, after an informal inquiry, the court determines that evidence exists to support a finding of incompetency, the court shall order an examination to determine whether the defendant is incompetent to stand trial.  
Id.
 art. 46B.005(a).  Furthermore, generally, if the court determines that evidence exists to support a finding of incompetency, the court shall hold a hearing before determining whether the defendant is incompetent to stand trial, and, on the request of either party or on the court’s motion, a jury shall make the determination as to whether the defendant is incompetent.  
Id.
 arts. 46B.005(b), 46B.051.

Lawrence claims that evidence suggesting he might be incompetent to stand trial came to the trial court’s attention during the pretrial, the guilt-innocence, and the punishment portions of trial.  He argues that his statements and testimony displayed a pattern of rambling speech, confused thoughts, and incomprehensible answers of a most bizarre quality.  We have thoroughly reviewed the record, and it does demonstrate that Lawrence provided rambling and often nonresponsive answers to questions that he was asked.  But most of Lawrence’s testimony and his answers to counsels’ questions reveal that he simply wanted his day in court and wanted an opportunity to tell his story his way.  His lengthy answers to direct questions from counsel demonstrate his penchant for describing the details of the offenses and the details of his thoughts during and after the offenses for which he was charged and convicted.  Lawrence’s testimony shows not that he could not consult with his attorney or that he lacked a rational and factual understanding of the proceedings against him, but simply that he cared deeply about his daughter’s welfare and was willing to implement a dramatic plan in an effort to “save her.”  Though his plan for saving his daughter was unusual and unlawful, it does not demonstrate incompetence as that term is defined.  
See id.
 art. 46B.003(a); 
see also Luke v. State
, No. 07-02-00397-CR, 2003 WL 21981940, at *4 (Tex. App.—Amarillo Aug. 19, 2003, no pet.) (mem. op.).  
Cf. Clark v. State
, 47 S.W.3d 211, 218 (Tex. App.—Beaumont 2001, no pet.) (appellant’s conduct at pretrial hearing was bizarre; he kept repeating that he wanted to go to Skyview psychiatric unit and said that he had no case pending and no attorney).  
Because nothing in the record raised the issue of Lawrence’s ability to consult with his counsel or his ability to understand the proceedings and the charges against him at anytime during the proceedings, we hold that the evidence presented during the pretrial, the guilt-innocence, and the punishment portions of the trial was insufficient to suggest that Lawrence was incompetent to stand trial.  
See
 
Tex. Code Crim. Proc. Ann.
 arts. 46B.003(a), 46B.004(c).

In 
Richardson
, the Houston First Court of Appeals held that “the requirement concerning a trial judge’s duty to conduct an informal competency inquiry in Chapter 46B is substantively similar to the requirement set forth in former article 46.02.”  2005 WL 267708, at *2 n.3.  Accordingly, the Houston court applied the “raises a bona fide doubt . . . about the defendant’s competency” case law to determine whether evidence “suggesting incompetency” came to the trial court’s attention under article 46B.004(b).  
Id.
  Lawrence argues that article 46B.004(b)’s “evidence suggesting”  incompetency language creates a new, lower evidentiary threshold for trial courts in determining the necessity of an informal inquiry concerning competency.  We do not address this issue because even giving article 46B.004(b)’s “evidence suggesting” language a broad interpretation, no evidence of “incompetency,” as that term is statutorily defined, exists in the record before us.

I
f Lawrence’s rambling, nonresponsive testimony could be construed as “evidence suggesting” incompetency, the record reveals that the trial court conducted the statutorily mandated “informal inquiry” immediately prior to trial:

THE COURT:  This is Cause No. 40,339-A, The State of Texas vs. Lee Wayne Lawrence.  The matter is set for jury trial in just a few minutes.  I do need to do an arraignment and also determine any remaining pretrial issues.

Sir, is your name Lee Wayne Lawrence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Lawrence, you’re before the Court today; you’re charged in this case by grand jury indictment with the offense of possession of a prohibited weapon and aggravated assault, two counts.  Also there are two enhancement paragraphs in the indictment.

In the indictment your name is set out as Lee, L-e-e, Wayne, W-a-y-n-e, Lawrence, L-a-w-r-e-n-c-e.  Is that your correct name?

THE DEFENDANT:  Yes.

THE COURT:  Is it spelled correctly?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lawrence, have you ever been hospitalized for any mental disease or defect or treated by a psychiatrist?

THE DEFENDANT:  I’ve been treated for depression.

THE COURT:  By a psychiatrist?

THE DEFENDANT:  Yes.

THE COURT:  Have you told your attorney so he can advise you as to whether that has any affect on this morning’s proceedings?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Now, while this case has been pending against you have you always understood the nature of these charges.

THE DEFENDANT:  No, sir.  I’ve had three different lawyers on my case, and I’ve never met this man before.

THE COURT:  Okay.  We’re going to take that up in a minute.  I’m just asking about the charges themselves.  Have you understood what you’re charged with?  Not necessarily why you’re charged, and I’m not asking you certainly if you agree with it.  But do you understand the charges that you’re facing, possession of a prohibited weapon and the two counts of aggravated assault?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  And in talking with your attorneys -- I’m not asking whether you agree with your attorneys at this time, but in talking with your attorneys have you understood those conversations?

THE DEFENDANT:  No, sir, not -- I sure haven’t because I’ve been told that there’s going to be witnesses gonna appear for the defense all the way up until yesterday and then yesterday whoever I talked to that said they was the lawyer on the phone told me that no, that I didn’t have none.  And I just got through asking my attorney back there.  I said, well, what about those ones that the investigator talked to that said that they was gonna testify?  How come they’re not here?  And he said, well, we can’t find nobody.

THE COURT:  But did you understand those conversations?  Again, I’m not asking you if you agree with that, but did you understand what they’re telling you?

THE DEFENDANT:  Well, not really because the investigator was telling me one thing about all of the testimony that’s gonna go for me.  And then whoever I was talking to that said that they was my lawyer on the phone, I would talk to them later and he’d tell me something else that was contrary.  And so it went back and forth, and I don’t -- I don’t -- I really don’t understand what’s happening.

THE COURT:  Have you been able to explain to your attorney your side of the case?

THE DEFENDANT:  I’ve never really talked to him about it, but I’ve talked to the investigator about it.  And he’s the only one that I’ve really talked to about the case.

THE COURT: But have you been able to explain that to the folks in your attorney’s office?

THE DEFENDANT:  Well, whoever I was talking to on the phone that said they was my attorney, every time I tried to explain what happened I was told that it was irrelevant.

THE COURT:  Mr. Curry, do you believe that your client is presently competent to stand trial?

[DEFENSE COUNSEL]:  Your Honor, we had an ex parte evaluation of Mr. Lawrence done in the summer of last year, and the finding in that was that he was competent to stand trial.  In my conversations with him, although we disagreed about matters, I think he’s understood what I’ve said.  He’s been able to relate to me appropriate questions with regards to his situation.  So, I mean, I can’t speak to what’s in his -- going on with him right at this moment, but I have not had a question about his competency up to this point.

THE COURT:  Okay.  What are your opinions as we sit here this morning?

[DEFENSE COUNSEL]:  In any conversation with him on the phone yesterday and in conversation with him this morning I still -- there’s been nothing said to me that based on my experience would suggest that he’s not competent.

The trial court then took up the State’s motion in limine, followed at length by testimony from Lawrence on his request for new counsel, which the trial court denied.  With regard to Lawrence’s request to find witnesses, the trial court allowed time for the defense to draft a motion for continuance, which was granted. 

After reviewing the entire record from the pretrial hearing, the guilt-innocence phase, and the punishment phase of trial, we cannot say that the trial court abused its discretion by failing to conduct further inquiry into Lawrence’s competency.  
See Donnell v. State
, 148 S.W.3d 674, 676 (Tex. App.—Beaumont 2004, no pet.).  The trial court’s informal inquiry set forth above established that Lawrence was not suffering from recent severe mental illness or moderate retardation, that he understood the charges that he was facing, that he had been able to communicate in a meaningful way with his attorneys, that an ex parte evaluation had found him competent to stand trial, and that his own counsel had no question about his competence to stand trial.  Although Lawrence’s appellate counsel urged during oral argument that the trial court should have had additional dialog beyond just whether Lawrence understood the charges against him and could communicate meaningfully with his attorney, we cannot agree.  The informal competence inquiry conducted by the trial court satisfied Chapter 46B.  Although the trial court certainly could have conducted a more detailed inquiry,
(footnote: 1) the inquiry it did conduct was not so deficient that it constituted an abuse of discretion.  
See Lewis
, 911 S.W.2d at 7.

We overrule Lawrence’s first point.

IV.  Legally and Factually Sufficient Evidence of 

Explosive Weapon’s Capabilities

In his second point, Lawrence argues that the evidence is legally and factually insufficient to establish that the “explosive weapon” he was charged with possessing—the pipe bomb worn around his neck—was designed, made, or adapted for the purpose of inflicting bodily injury, death, or substantial property damage.  The State contends that the testimony of their expert witness and of Lawrence himself proved that the device was capable of causing an explosion that would cause serious bodily injury. 

A. Legal Sufficiency Standard

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

B. Factual Sufficiency Standard

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

C. Analysis

Texas Penal Code section 46.01(2) defines “explosive weapon” as “any explosive or incendiary bomb, grenade, rocket, or mine, that is designed, made, or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage.”  
Tex. Penal Code Ann.
 § 46.01(2) (Vernon 2003).

Here, the record demonstrates that the State’s expert testified as follows:

[PROSECUTOR:] Now, from that sample of what you collected from State’s [Exhibit No.] 14, did you have an opportunity to test that and see if it was capable of causing an explosion?

[DR. JOHN RHOADS:
(footnote: 2)] I did.

Q.  And what was your result of that test?

A.  The material -- the powder that was separated from the shot did explode.

Q.  Now, have you also had an opportunity to see this piece of PVC pipe that’s been admitted as State’s Exhibit No. 5?

A.  I did.

Q.  And based on the tests that you performed on the sample that you took and your knowledge, your training, and your experience in the field of physics, do you have an opinion as to whether this PVC pipe, if it was filed [sic] with the substance that you tested and capped with a primer from a shotgun shell on the top, whether that was capable of causing an explosion?

A.  In my opinion it would have, yes.

Q.  Doctor Rhoads, we hear a lot about pipe bombs and how people make homemade pipe bombs.  What is it about a pipe joint that makes it conducive as a homemade bomb?

A.  The device needs to contain the expanding gases to propel material and the device.

Q.  All right.  Now, if this device, State’s [Exhibit No.] 5, was filled with the screws and the nails, the shotgun shot and the powder that are shown in State’s Exhibit No. 3, and if that had been exploded, in your opinion would that have hurled the nails and screws outside at a pretty high velocity?

A.  In my opinion it would, yes.

Q.  Would it have placed anybody in the near proximity in danger?

A.  I would not want to have been in the room.

Witnesses testified that Lawrence threatened to blow up the building.  The disk jockey from the club testified that Lawrence held a lit cigar over the top of the pipe bomb and asked if the disk jockey was “ready to f---ing die.” Officer Beggs testified that “[w]hat this gentleman had in his bomb would have hurt somebody severely with the fragmentation and just the pressure in the pipe itself.”  Based on his training, Officer Beggs had no doubt in his mind that the PVC pipe bomb, as it was constructed with the primer on the end and the gunpowder and shotgun shot inside, was an explosive weapon.  Lawrence himself  testified concerning the explosive attributes of and the potential harm that could result from the pipe bomb:

If I did get a chance to set that thing off all it’s gonna do is that shell deal on the top . . . would . . . shoot out.  I mean, it would pop straight up because when the -- when the shell goes off it’s gonna shoot down.  And because the deal is loose, it’s just gonna fly up like that (indicating) and whatever’s in the pipe is gonna just try to fly out the top of it because it has nothing to control the perimeter to cause the pipe to explode.  I mean, that’s common physics.

. . . .

Only thing that’s gonna happen with that piece of pipe if I was to be able to set that thing off is that dad-gum thing is gonna fly up there to the ceiling and then whatever is inside that pipe and just gonna fly up in your face and then you’re gonna look pretty bad the rest of your life wherever you’re at, in prison or wherever.  You’re not gonna die. . . .  I mean, you’re not gonna want to maim yourself. 

The important and relevant evidence supporting Lawrence’s factual sufficiency complaint was provided by Lawrence.  Lawrence repeatedly told the jury that he was merely trying to get a point across and that he was not trying to blow up the building.  He explained that he had to make the pipe bomb look legitimate and menacing and that he threatened to light it with the cigar to make the people in the club think he was serious.  He said that he really did not want anybody to get hurt. 

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the pipe bomb to be an “explosive weapon” that was designed, made, or adapted for the purpose of inflicting serious bodily injury, death, or substantial property damage.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789
.  Furthermore, viewing all the evidence in a neutral light, favoring neither party, we also conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt.  
Dotson v. State
, 146 S.W.3d 285, 295 (Tex. App.—Fort Worth 2004, pet. ref’d).  Accordingly, we hold that the evidence is both legally and factually sufficient to support Lawrence’s conviction for possession of an explosive weapon.  
See McWilliams v. State
, No. 13-97-00830-CR, 1999 WL 33757429, at *3 (Tex. App.—Corpus Christi Apr. 22, 1999, no pet.) (not designated for publication) (holding evidence legally and factually sufficient to establish elements of possession of an explosive weapon beyond a reasonable doubt).  We overrule Lawrence’s second point. 

V.  Conclusion

Having overruled each of Lawrence’s two points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

PUBLISH

DELIVERED: June 9, 2005

FOOTNOTES
1:
During oral argument, Lawrence’s counsel argued that the trial court should be required to make a finding of competence on the record and that an adequate informal inquiry into a defendant’s competence should include questioning jailers about the defendant’s behavior while in jail, questioning the defendant’s family members about the defendant’s mental status, conducting an 
en camera 
review of any ex parte psychological evaluations of the defendant, and even asking the defendant what offense he is charged with to test his understanding of the proceedings against him.  Although we decline to hold that these inquiries by the trial court are required in an informal inquiry, they do constitute useful, nonexclusive sources of information available to the trial court in making such an inquiry.

2:
Dr. Rhoads is a professor of physics at Midwestern State University.  He received his PhD from Oklahoma State University after completing his dissertation on the radiation defects introduced by electronics on solid material. Lawrence did not object to Dr. Rhoads’s testimony or his qualifications during the trial.