COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-094-CR

RONALD MICHAEL HILL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In two points, appellant Ronald Michael Hill appeals his conviction for murder, asserting that the trial court should have granted his motion for a new trial because he alleges that he was incompetent at trial and that the trial court erred by failing to determine whether he was voluntarily absent during trial.  We affirm.

BACKGROUND

Appellant, a married father of four in his thirties, had an account with the same dating service phone chat line as his fifteen-year-old victim.  The evidence at trial indicated that Appellant cut the victim’s throat on March 15, 2005, after she told him that she would keep the baby if pregnant with his child.
(footnote: 2)  Appellant was charged with murder and initially pled not guilty and true to the repeat offender allegation for aggravated robbery.

On the first day of trial, after court adjourned after empaneling and instructing the jury, Appellant was seen showing his family a handwritten note. The note stated

Evon, Kesha, Momma, y’all have to go and get Quashunda.  They want her to take the stand.  She can’t be allowed to do that.  You’ll need to get her and take her to Grandma’s house until the trial is over.  She cannot testify at all.  And I will have to have someone to claim the pregnancy test, someone to say I was sexually involved with them during the month of February and they thought they was pregnant because they missed the cycle.  It was a one-time deal and nothing else.  The case goes away with that, and one person who could be used is Visa or Christie.  Otherwise, I’m in trouble.

Quashunda is Appellant’s sixteen-year-old daughter.  She testified that Appellant called her and asked her to tell his current wife, Sharnise, that he had bought the pregnancy test and condoms for Quashunda, explaining that he did not want Sharnise to know that he was having an affair.  Quashunda did so, but then told her mother, Appellant’s ex-wife, about what her father had asked her to do.  The next day, she gave a written statement to the police about her father’s request.  The Appellant’s note was retrieved from him.
(footnote: 3)  The next day, Appellant chose to change his plea to guilty.

The trial judge thoroughly admonished Appellant before allowing him to change his plea, and then asked Appellant’s attorney if Appellant’s plea change was made with his consent.  Appellant’s attorney indicated that it was.  The trial judge then reiterated to Appellant the seriousness of the change, stating,

You understand, [Appellant], that if you enter this plea in front of the jury, that I will instruct the jury at the conclusion of the trial to find you guilty and the jury will . . . have a single issue as to what the punishment is to be assessed. Do you understand that?

Appellant replied, “yes.”  The trial judge then informed Appellant of the punishment range and asked if Appellant understood.  Appellant said that he did.  Finally, the trial judge asked him, “Knowing all of these things, do you still wish to plead guilty?”  Appellant said, “yes,” and the trial judge accepted his plea.  In his opening statement, Appellant’s attorney explained the plea change to the jury, saying that,

[Appellant chose], for whatever reason, to attempt to get some people to not tell the truth in this case and to secrete a witness from you so that you would not hear from her, and he has been caught in that.  That changes this case from a circumstantial one.  And that is the reason for his change of plea.

After the State’s first three witnesses testified, Appellant’s attorney asked the trial court to instruct Appellant on how to behave and to work with him.  He stated that after Appellant pled guilty, he initially refused to look at the State’s exhibits, photographs of the inside of the victim’s home, and after that,

[H]e’s again kind of basically shut down.  I don’t know what words to use to describe it. . . . He is sitting at the table staring at the table or keeping his eyes closed.  He’s nonresponsive to me when I try to speak with him.  If I nudge him because he appears to maybe be asleep, he doesn’t respond in any way as a rule.  He’s been reluctant to stand when the Court’s ordered him to stand. . . . This case is not over.  There are many things that [Appellant] can do to lessen the effect of his actions that he has now acknowledged.  There are things that he can do to make things worse.

The court instructed Appellant to look at him when addressed, to sit with his head up, and to work with his attorney.  Appellant orally acknowledged these instructions.

Later the same day, Appellant’s attorney asked that the record reflect that Appellant had decided to voluntarily absent himself, acknowledging that the trial court had acceded to his request to have Appellant examined by a doctor.  He described Appellant’s behavior:

[Appellant] is drooling at my table, both on me, my feet, and the papers and the table.  He’s acting as though he’s suddenly nodding off and then jerks to wakefulness in such a startling manner as to cause the bailiffs to worry about him as perhaps that he’s about to get up and leave.  He is sniffling and crying and whining.  And I think that for those reasons his presence is actually a detriment to him at this point and so I agree with his decision [to voluntarily absent himself].

The trial court granted his request and added,

The record will also reflect that the Court during the break asked the physician from the Tarrant County Jail to come over and examine [Appellant].  The doctor indicated to the Court that [Appellant], although somewhat disoriented, posed no medical concern to the doctor in that he was able to stand, extend his arms[,] to function physically as well as mentally.  He had some delay as far as being able to focus, but the doctor felt even if he wished to continue physically in the court, there would be no medical concern on behalf of the doctor for [Appellant’s] well-being.

The examining physician, Dr. Alan Byrd, who was the Medical Director for Correctional Health Services at the Tarrant County Jail, filed an affidavit that stated that he examined Appellant’s general condition in a holdover room off the courtroom and that: 

My observation at that time was that generally [Appellant] was sitting upright, quietly[,] in no obvious distress.  I asked him some general questions to which he responded appropriately.  I listened to his chest and felt his pulse and did not feel he was in any acute distress.  I asked him to stand and walk for me[,] which he did slowly but appropriately.  He was able to follow verbal commands that I gave him.  I then reported my findings to the Judge and told him I did not think [Appellant] had a life threatening condition and in general[,] based on my limited evaluation[,] his condition was stable.

The next day, before trial resumed, Appellant’s attorney informed the trial court that Appellant was still behaving oddly, by refusing to make eye contact, acting as though he were asleep, drooling, speaking in a cross between gibberish and baby talk, and “acting as though he was in sort of a catatonic state.”  He concluded by informing the trial court of Appellant’s decision not to attend trial that day because his family was not there and added

I do not think he is in a bad state as he was yesterday, even though he presented that behavior [to the deputy].  And it’s my opinion that he may possibly be malingering in some respects to that.  I think that’s the opinion the doctor shared with Your Honor yesterday.  However, he did make sense.  He did make a decision, and it’s his to make, and it was that he did not wish to attend the trial.

Appellant changed his mind later that day and returned to the trial.  Outside the presence of the jury, Appellant’s attorney told the trial court, “Upon being informed that his family was now present in the courtroom, my client changed his mind about attending his trial.”  Appellant was convicted by the jury and sentenced to life imprisonment.

Appellant’s motion for new trial included his averment that he did “not recall pleading guilty and was not mentally stable to understand or react to anything that morning [March 1, 2006, the day after jury selection]” and that he was unable to respond to any questions or motions of any sort.  At the hearing on this motion, Appellant testified that to relax during trial, he had purchased and taken antipsychotic medication from other inmates the day after jury selection.  He testified that he did not recall changing his plea to guilty and that he had been unaware of anything going on around him at trial and had not been able to assist his attorney in the defense of his case.

A two-page document from Dr. Kelly Goodness, containing her conclusion as a medical psychological expert with regard to Appellant’s competence, was admitted into evidence at the hearing.  Her report contained Appellant’s assertions that he had ingested six 300-milligram Seroquel tablets and six 100-milligram Elavil tablets on the day he pled guilty, and as a consequence, had no recall of any events between the time that he ingested the medication at eight a.m. that day until approximately five or six p.m. that evening.  She opined that Appellant was competent to enter a guilty plea, stating:

• [Appellant’s] description of amnesia on the day he entered his plea does not mesh well with what would be expected with ingesting what he has claimed to have ingested. . . . At a minimum, it would take some time for the medication to work its way through his system before providing a sedating effect significant enough to prevent the encoding of memories.  Moreover, [Appellant] provided some contradictory information regarding what he does and does not recall from that day suggesting that he is not being entirely forthright in his report.

• [Appellant] reported that he voluntarily ingested the substances.  As such, any deleterious effects on his mental abilities were not due to a serious mental illness or defect, but were rather due to willful actions on [Appellant’s] part.

• It is my professional opinion that [Appellant] was competent to plead guilty at the time that he did so on March 1, 2005.

In response to the State’s question about any steps Appellant had taken while in jail to manipulate the system for housing assignments, Appellant said that he had not.  The State then brought forth a report from the Tarrant County jail that stated, “client admits housing manipulation.”  Appellant claimed that he took six Seroquel pills from one inmate and four or five Elavil
(footnote: 4) pills from another.
(footnote: 5)  Appellant’s attorney also asked the trial court to take judicial notice of two affidavits from Appellant, which it agreed to do.

Similar to his testimony at the new trial hearing, Appellant’s affidavit asserted that he did not recall changing his plea to guilty and that he “was told by guards and representative[s] of the M.H.M.R. I was out of it when they brought me in,” and that someone told him that he might have had a “brain shutdown.”  He continued:

They say [his family] I was drulling [sic] and not here and if one sense that is so I was not mentally stable to enter a plea of guilt when I haven’t done nothing.  I was shacked the entire time when I came back and was barely understanding what was going on during trial until I asked my lawyer why he’s not questioning the witnesses and you judge told the jury to find me guilty.  I didn’t know what to say until my family asked me why I plead guilty and I told them I didn’t.  If I was guilty I could have taken a plea deal but I wouldn’t.  The note I could have easily explained because one of the witnesses mother was one of the females I had sexual relations with and I didn’t want to harm her marriage or mines [sic]. . . . Also if it pleases the court why would they put me on suicide watch and put me in a green padded suit if someone didn’t come to a conclusion that something was wrong.  I wasn’t sentenced and this was the 1st day of trial.  Someone made a decision I was not alright or I would have been back on my tank in population and not on suicide watch in a padded cloth.  I didn’t tell nobody I was going to harm myself so who seen me and had me administered like that. 

Appellant also said “no” when the State asked him if he recalled, after jury selection on the first day of trial, showing his family the note he had written about Quashunda.  The trial court denied his motion for new trial.

DISCUSSION

In his first point, Appellant contends that the trial court should have granted his motion for a new trial because he was not competent to stand trial and that the trial court erred by failing to conduct a hearing during trial with regard to Appellant’s competency as soon as evidence of his incompetency was brought to the court’s attention.  In his second point, related to the first, he argues that the trial court erred by failing to determine, by direct questioning, whether he was absent voluntarily from the trial court punishment proceedings under article 33.03 of the Texas Code of Criminal Procedure.  
Tex. Code Crim. Proc. Ann
. art. 33.03 (Vernon 2006).

Standard Of Review

We review a trial court’s denial of a motion for new trial, its decision not to conduct a competency hearing, and its determination that a defendant is voluntarily absent under the abuse of discretion standard.  
See Holden v. State
, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006) (new trial); 
Moore v. State
, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999) (competency hearing), 
cert. denied
, 530 U.S. 1216 (2000); 
Moore v. State
, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) (voluntary absence); 
Lawrence v. State
, 169 S.W.3d 319, 322 (Tex. App.—Fort Worth 2005, pet. ref’d) (competency hearing).  A trial court abuses its discretion if its decision is arbitrary or unreasonable.  
Lewis v. State
, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  Because Appellant contends that his plea change shows incompetency, we must review the trial court’s decision to allow him to change his plea to guilty at trial, as well as whether the trial court abused its discretion by failing to conduct a competency hearing during the trial, whether it abused its discretion by denying Appellant’s motion for new trial on that basis, and whether Appellant’s absence from trial was voluntary.

Appellant’s Guilty Plea

A guilty plea must be freely, knowingly, and voluntarily made.  
Brady v. United States
, 397 U.S. 742, 748, 90 S. Ct. 1463, 1468-69 (1970); 
Mitschke v. State
, 129 S.W.3d 130, 136 (Tex. Crim. App. 2004).  In considering the voluntariness of a guilty plea, the court should examine the record as a whole.  
Martinez v. State
, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); 
see also 
 
Tex. Code Crim. Proc. Ann
. art. 26.13 (Vernon 1989 & Supp. 2006).  When the record reflects that a defendant was properly admonished, it presents a prima facie showing that the guilty plea was knowing and voluntary.  
Martinez
, 981 S.W.2d at 197; 
Ribelin v. State
, 1 S.W.3d 882, 884 (Tex. App.—Fort Worth 1999, pet. ref’d).  The burden then shifts to the defendant to show that his plea was not voluntary.  
Martinez
, 981 S.W.2d at 197; 
Ribelin
, 1 S.W.3d at 884.  Unless an issue is made of an accused’s present insanity or mental competency at the time of the plea, the court need not make inquiry or hear evidence on such issue.  
Kuyava v. State
, 538 S.W.2d 627, 628 (Tex. Crim. App. 1976).

Here, the record indicates that, before accepting Appellant’s guilty plea, the trial court thoroughly admonished Appellant about his decision to change his plea.  Appellant affirmatively acknowledged these admonishments and still chose to change his plea to guilty.  This presented a prima facie showing that his plea was knowing, intelligent, and voluntary.  
See Martinez
, 981 S.W.2d at 197; 
Ribelin
, 1 S.W.3d at 884.

Appellant’s trial counsel also indicated to the trial court that the plea change was with his consent and stated, “I feel [Appellant] adequately understands his options, his rights, and he has made an intelligent and free choice.”  Reviewing the record as a whole, including the note recovered from Appellant after jury selection that indicated he planned to keep one witness from testifying and to find another witness to lie for him, it would appear that Appellant’s plea change was knowing, intelligent, and voluntary.  Dr. Goodness’s opinion submitted at the new trial hearing corroborates the voluntariness of Appellant’s plea.

We must next examine whether Appellant’s subsequent behavior at trial and his claims in his motion for new trial are sufficient to demonstrate that Appellant’s plea was not actually voluntary, that he was not competent to stand trial, and that the trial court abused its discretion when it did not hold a competency hearing during the trial and denied Appellant’s motion for a new trial. 

Chapter 46B Of The Texas Code Of Criminal Procedure

Chapter 46B of the code of criminal procedure addresses a criminal defendant’s competence to stand trial.  
See
 
Tex. Code Crim. Proc. Ann
. art. 46B.001-.171 (Vernon 2006).  Article 46B.004, entitled “Raising Issue of Incompetency to Stand Trial,” provides,

(a) Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial.  A motion suggesting that the defendant may be incompetent to stand trial may be supported by affidavits setting out the facts on which the suggestion is made.

(b) If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial.

(c) On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.

Id
. art. 46B.004.  If, under subsection (b), evidence comes to the trial court’s attention suggesting that the defendant may be incompetent to stand trial, then, under subsection (c), the trial court is required to determine by informal inquiry whether there is some evidence that would support a finding that the defendant may be incompetent to stand trial.  
Id
.; 
Lawrence
, 169 S.W.3d at 322.

A person is incompetent to stand trial if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational, as well as factual, understanding of the proceedings against him.  
Tex. Code Crim. Proc. Ann
. art. 46B.003(a).  However, a defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence.  
Id
. art. 46B.003(b).  If, after an informal inquiry, the court determines that evidence exists to support a finding of incompetency, the court shall order an examination to determine whether the defendant is incompetent to stand trial.  
Id
. art. 46B.005(a).  A court must conduct a competency inquiry only if there is evidence sufficient to create a bona fide doubt in the mind of the judge whether the defendant meets the test of legal competence.
(footnote: 6)  
See
 
Alcott v. State
, 51 S.W.3d 596, 601 (Tex. Crim. App. 2001); 
Moore
, 999 S.W.2d at 393; 
see also Sosa v. State
, 201 S.W.3d 831, 832 (Tex. App.—Fort Worth 2006, pet. ref’d).  A defendant must be competent to be sentenced.  
See Casey v. State
, 924 S.W.2d 946, 949 (Tex. Crim. App. 1996); 
see also 
Tex. Code Crim. Proc. Ann
. art. 42.07, §2.

In 
Moore
, in which the court of criminal appeals held that the record supported the trial court’s conclusion that there was no bona fide doubt as to the defendant’s competence, defense counsel raised the competency issue several times, based on communication problems with the defendant, his occasionally profane outbursts during trial, and his mental health history.  
999 S.W.2d at 393-94, 396-97.  
His counsel expressed the communications difficulty as, “I’m talking in apples and [his] responses are in oranges,” and stated that it appeared to him that the defendant did not have a rational or factual understanding of the proceedings against him.  
Id
. at 393-94.  The court of criminal appeals held that the unspecified communication problems, outbursts, and the defendant’s mental health history were insufficient to raise a bona fide doubt as to the defendant’s competence to stand trial.  
Id
. at 394-95, 397.  It reasoned that unruly and disruptive courtroom demeanor was not probative of incompetence to stand trial because if it were, then a defendant “could effectively avoid criminal justice through immature behavior.”  
Id
. at 395.  It also held that even though the defendant had been hospitalized for depression three years earlier and had a family history of mental illness and alcoholism, to raise the issue of competency with regard to mental health, there had to be evidence of recent
 
severe mental illness or bizarre acts by the defendant or moderate retardation.  
Id
. at 395.

In 
Lawrence
, the trial court’s informal inquiry established that the defendant did not suffer from recent severe mental illness or moderate retardation, that he understood the charges that he was facing, that he had been able to communicate in a meaningful way with his attorneys, that an ex parte evaluation had found him competent to stand trial, and that his own counsel had no question about his competence to stand trial.  169 S.W.3d at 325.  We held that this inquiry satisfied Chapter 46B.  
Id
.

In contrast to 
Moore
, Appellant’s attorney never raised the competence issue at trial, but rather, asked the trial court to instruct Appellant to work with him and to behave himself appropriately.  
Cf. Moore
, 999 S.W.2d at 393-94. He observed to the trial court on the following day that Appellant was possibly faking and that Appellant’s decision not to attend trial did make sense, in spite of Appellant’s strange behavior.  Appellant later changed his mind about attending trial when his family arrived.  At the close of trial, when asked whether he knew of any legal reason why sentence should not be pronounced, Appellant’s attorney said that he knew of none.

Dr. Byrd, who examined Appellant at the court’s request, stated in his affidavit that Appellant was in a stable condition.  There is no showing that the trial court abused its discretion by relying on Dr. Byrd’s report and not holding a competency hearing.  Appellant was able to communicate with the trial judge, his attorney, and Dr. Byrd, and appeared to have a rational and factual understanding of the proceedings against him, based on his decision to attend trial when his family was present.  
See
 
Lawrence
, 169 S.W.3d at 325
.  His ability to assist his attorney and his understanding of the proceedings against him manifested itself through his agreement to view the photos of the victim’s house and his insistence on being present at trial when his family attended. Appellant’s mental health history was not raised at trial.
(footnote: 7)  After reviewing the entire trial record, and in light of our discussion of voluntary absence below, we cannot say that the trial court abused its discretion by failing to conduct further inquiry into Appellant’s competency at trial.  
See Moore
, 999 S.W.2d at 393-95; 
Lawrence
, 169 S.W.3d at 325; 
Donnell v. State
, 148 S.W.3d 674, 676 (Tex. App.—Beaumont 2004, no pet.).

Motion For New Trial

A trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support its ruling.  
Holden
, 201 S.W.3d at 763.  When competency is challenged in a motion for new trial, the trial court does not look to see whether the evidence raises a bona fide doubt as to competence; instead, it applies the normal standard used in deciding a motion for new trial under which the trial court considers all the evidence presented, judges the credibility of witnesses, and resolves conflicts in the evidence.  
See Purchase v. State
, 84 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  We apply the abuse of discretion standard because, at this stage of the proceeding, the trial court determines whether Appellant’s incompetency, if any, impugned the integrity of its judgment during trial, and the trial court, having observed Appellant both at trial and at the motion for new trial hearing, is in the best position to make this determination.  
See Edwards v. State
, 993 S.W.2d 171, 176 (Tex. App.—El Paso 1999, pet. ref’d).  We consider all of the competency evidence presented at the motion for new trial hearing and reverse only if the trial court abused its discretion.  
Id
.

We have already reviewed Appellant’s behavior at trial, which he claims should have raised a bona fide doubt about his competency to stand trial, and concluded that the trial court did not abuse its discretion by not conducting a competency hearing during trial.  Appellant presented nothing more at the new trial hearing than his own testimony that he was incompetent at the time of trial because of some drugs that he took.  Appellant essentially testified that he was unable to assist his attorney and lacked a rational and factual understanding of the proceedings against him, stating that he did not recall changing his plea to guilty, that he “couldn’t have been aware of nothing that was going on with [him],” and that he basically had no recollection of anything after taking the drugs.

Considering Appellant’s testimony and affidavit, Dr. Goodness’s affidavit on the effect of Appellant’s alleged drug use on memory encoding, and Appellant’s impeachment through the MHMR records, which tended to show that Appellant lacked credibility,
(footnote: 8) we cannot say the trial court abused its discretion in denying Appellant’s motion for new trial.  Faced with conflicting testimony regarding the effects of the alleged drug use, the trial court, as finder of fact at the hearing, was entitled to assess Appellant’s credibility and believe or disbelieve any testimony presented. 
 See Purchase
, 84 S.W.3d at 700.  We overrule Appellant’s first point.

Voluntary Absence

While a criminal defendant has a constitutional right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings, he may waive that right.  
See Faretta v. California
, 422 U.S. 806, 819 n.15, 95 S. Ct. 2525, 2533 (1975); 
Garcia v. State
, 919 S.W.2d 370, 393-94 (Tex. Crim. App. 1996) (op. on reh’g).  When a defendant voluntarily absents himself after pleading to the indictment or after the jury has been selected, the trial may proceed to its conclusion.  
Tex. Code Crim. Proc. Ann
. art. 33.03; 
Bottom v. State
, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.).  An appellate court will not disturb the trial court’s findings without evidence from the defendant that his absence was not voluntary.  
Moore
, 670 S.W.2d at 261.  Here, the trial court agreed to Appellant’s trial counsel’s request that the record reflect that Appellant had decided to voluntarily absent himself from trial, implicitly finding that Appellant’s absence was voluntary.
(footnote: 9)  We note that Appellant did not make this complaint in his motion for new trial, raise it at his motion hearing, or offer any evidence to indicate that his absence was anything other than voluntary, other than his affidavit and testimony at the new trial hearing that he was incompetent at trial.
(footnote: 10)  The record reflects that Appellant was present at trial when he chose to be present, such as when his family attended.

It is the defendant’s intentional act, i.e., in voluntarily consuming drugs or alcohol, that appellate courts have considered in determining whether an absence from trial is voluntary.
(footnote: 11)  
See Bottom
, 860 S.W.2d at 267; 
see also Maines v. State
, 170 S.W.3d 149, 149-150 (Tex. App.—Eastland 2005, no pet.); 
Heard v. State
, 887 S.W.2d 94, 97-98 (Tex. App.—Texarkana 1994, pet. ref’d).  The voluntary absence can be mental or physical.  
See id.
; 
Bottom
, 860 S.W.2d at 267.

In 
Bottom
, the defendant was present for jury selection, but later attempted suicide by drug overdose and missed part of his trial.  860 S.W.2d at 267.  We held that Bottom’s absence was voluntary because he 
chose
 to ingest large quantities of aspirin and arthritis medication, and not because of some sudden unexpected medical emergency.  
Id
.  Our reasoning was that a defendant, acting voluntarily, cannot avoid trial by intentionally disabling himself.  
Id
. 

In 
Maines
, the defendant took an overdose of fifty-two prescription pills after the first day of trial and contended that this subsequently rendered him incompetent.  170 S.W.3d at 149.  The trial court recessed the day after the overdose.  
Id
. at 150.  When the defendant returned to court on the following day, he behaved similarly to Appellant, keeping his head down, failing to rise for the court, and “attempting to indicate that he was extremely sleepy or narcotized.”  
Id
.  Unlike Appellant’s situation, Maines’s attorney informed the court that his client was incoherent and irrational during their discussions and that he questioned his client’s competency to stand trial.  
Id
.  The trial court held a competency inquiry and determined that there was not enough evidence to impanel a separate jury for a competency hearing.  
Id
.  The appellate court held that because Maines acted voluntarily in taking the overdose, he was not entitled to a competency hearing, even if the overdose did affect his competency at trial, and that the overdose was a voluntary absence, because a defendant cannot avoid trial by intentionally disabling himself.  
Id
.

Finally, in 
Heard
, the defendant, an alcoholic, was present during jury selection, but later failed to appear at trial because he was intoxicated.  887 S.W.2d at 97-98.  There was no evidence that he was involuntarily absent.  
Id
. at 98.  The appellate court looked to the penal code’s treatment of intoxication to aid it in classifying the defendant’s absence as voluntary or involuntary.  
Id
.; 
see
 
Tex. Penal Code Ann
. § 8.04 (Vernon 2003).  Concluding that because intoxication is voluntary if a defendant has exercised independent judgment or volition in taking the intoxicant, the court held that Heard’s failure to appear for trial because of self-induced intoxication constituted a voluntary absence.  
Heard
, 887 S.W.2d at 98.

Here, Appellant asserts that he took drugs that he purchased from other inmates in order to relax him at trial.  Assuming that he did, in fact, take drugs that possibly rendered him incompetent, because taking the drugs was a voluntary act, even if his alleged resulting incompetence was not intentional, this would constitute a voluntary absence at trial.  
See Bottom
, 860 S.W.2d at 267; 
see also Maines
, 170 S.W.3d at 149-150; 
Heard
, 887 S.W.2d at 97-98.  Therefore, the trial court did not abuse its discretion by not directly questioning Appellant regarding the voluntariness of his absence.  Because Appellant chose to voluntarily absent himself, by ingesting drugs or otherwise, and without any other evidence to refute the trial court’s implicit determination that Appellant’s absence was voluntary, we will not disturb its judgment.  
See Moore
, 670 S.W.2d at 261.  
We overrule Appellant’s second point.

CONCLUSION

Having overruled both of Appellant’s points, we affirm the judgment of the trial court.

DIXON W. HOLMAN

JUSTICE

PANEL B:  LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
  March 22, 2007

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Evidence at trial included the chat company’s records, Appellant’s and the victim’s phone records, the electronic register journal from a Walgreen’s two blocks from the victim’s house, which showed that condoms and a pregnancy test were purchased with a debit card in Appellant’s name on March 15, 2005, and the Walgreen’s surveillance tape from that day.  Two of Appellant’s fellow inmates also testified that Appellant confessed to them.

3:
The note was admitted into evidence and published to the jury during the third day of trial.

4:
Seroquel is used to treat mental conditions like bipolar disorder or schizophrenia and is an anti-psychotic drug used to restore the balance of the brain’s neurotransmitters.  
See
 RxList, Drugs & Treatments—Seroquel Oral, 
 
http://fdb.rxlist.com/drugs/drug-4718-Seroquel+Oral.aspx?drugid=4718&drugname=Seroquel+Oral (last visited February 27, 2007).  It is supposed to decrease hallucinations, improve concentration, and prevent severe mood swings.  
Id
.  Elavil is used to treat depression. 
 See
 
id
., Elavil Oral, 
 
http://fdb.rxlist.com/drugs/drug-1807-Elavil+Oral.aspx?drugid=1807&drugname=Elavil+Oral (last visited February 27, 2007).

5:
Appellant’s appellate attorney informed the trial court that after his appointment for Appellant’s appeal, he contacted Appellant’s trial attorney, who told him that “after a conversation he had had with [Appellant], he . . . had been made aware that it is now [Appellant’s] contention that he was not competent at some portion during his trial.”  That led Appellant’s new attorney to request the court to appoint a doctor to examine Appellant and the trial court subsequently appointed Dr. Goodness.  After Dr. Goodness reported that in her opinion, Appellant had been competent, he informed Appellant that Appellant would have to pay for any second opinion and he informed the trial court that he spoke with Appellant’s wife three times about arranging for a doctor, but that she never followed through.  Appellant complained at his hearing that his family had tried to arrange for a second opinion, but that his attorney had not communicated with him or his family.

6:
Although there have been recent cases addressing whether the “suggestion” of incompetence has replaced the “bona fide doubt” standard, because, based on our analysis below, there was no evidence suggesting incompetency during trial, and because neither Appellant nor the State raises this issue, we will not address it.  
See
 
Tex. R. App. P
. 47.1.  Appellant did not testify at trial and had no history of mental illness.  
Cf. Greene v. State
, No. 04-05-00783-CR, 2007 WL 390309, at *4 n.3, *5 (Tex. App.—San Antonio Feb. 7, 2007, no pet.) (op. on reh’g.) (holding that defendant’s rambling, nonresponsive answers to questions during his testimony, his long history of mental illness, and the fact that he was on schizophrenia medication were sufficient suggestions to alert the trial court to the possibility that Greene was incompetent to stand trial).

7:
Appellant’s MHMR and medical records were attached to the record by business affidavit.  They indicate that he may have suffered depression at times while in prison, between August 2005 and March 2006. However, there was no evidence presented at trial or at the hearing on the motion for new trial that showed that Appellant’s unusual behavior was caused by anything other than his alleged voluntary drug ingestion.

8:
At his new trial hearing, the inference that Appellant had lied before was raised when Appellant denied admitting to MHMR personnel that he had manipulated the jail housing system, although that is what his records indicated.

9:
This situation is somewhat analogous to situations in which the trial judge and defense counsel agree that a defendant should be removed from a courtroom.  Generally, in such circumstances, we presume, absent evidence in the record to the contrary, that the defendant’s tone, volume, or demeanor must have been highly disruptive.  
Compare Ramirez v. State
, 76 S.W.3d 121, 129-130 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d) (holding expulsion not constitutionally improper when trial court lacked reason to believe defendant’s misbehavior would cease)
 with Kessel v. State
, 161 S.W.3d 40, 42-43 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d) (holding reversible error when trial court denied counsel’s objections to proceeding and defendant was slumped over in his chair, uncommunicative; trial court remarked that it was “absolutely convinced this is nothing more than an attempt on [defendant’s] part to inhibit and perhaps prohibit the conclusion of this trial today”), 
cert. denied
, 126 S. Ct. 484 (2005).  Here, however, Appellant’s behavior was not overtly disruptive.  Instead, his trial counsel essentially made a trial strategy decision.

In an ineffective assistance of counsel claim, we presume that Appellant’s trial counsel was better positioned than the appellate court to judge the pragmatism of the particular case and that he made all significant decisions in the exercise of reasonable professional judgment.  
See Jackson v. State
, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  Although Appellant does not complain outright of ineffective trial assistance, the essence of his complaint would appear to be that his trial attorney acted against his interests when he requested that the record reflect that Appellant had decided to voluntarily absent himself.  Therefore, the trial strategy adopted by his attorney would warrant the same presumption.  
See id.
; 
see also Strickland v. Washington
, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984) (stating that there is a “strong presumption that [trial] counsel’s conduct falls within the wide range of reasonable professional assistance”).

10:
Appellant’s right to be present in the courtroom must be implemented by the judicial system unless expressly waived.  
See Garcia v. State
, 149 S.W.3d 135, 143-45 (Tex. Crim. App. 2004) (holding that this right is not subject to ordinary preservation-of-error rules but must be implemented unless it is expressly waived); 
see also Illinois v. Allen
, 397 U.S. 337, 342-43, 90 S. Ct. 1057, 1060-61 (1970) (holding that defendant’s right to be present in courtroom during trial is not absolute and may be waived by consent or by disorderly and disruptive conduct).

11:
Assuming Appellant took drugs, such an action is similar to that of a defendant who absents himself from trial by flight or disruptive behavior, forfeiting the right to participate in the trial by inviting error.  
See, e.g., Allen
, 397 U.S. at 342-43, 90 S. Ct. at 1060; 
see also Johnston v. State
, 750 F. Supp. 236, 237, 243-44 (S.D. Tex. 1990) (holding that when defendant was neither retarded, crazy, nor injured, but rather, voluntarily intoxicated at trial, this constituted absence from the trial proceedings rather than incompetency).