NO. 07-05-0127-CR


 

IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 26, 2007


 ______________________________



RICKY HAROLD ROJAS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;



NO. 16,316-B; HONORABLE JOHN BOARD, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

OPINION


 Ricky Harold Rojas appeals his conviction of the felony offense of possession of a
controlled substance. He presents two issues on appeal, contending the trial court erred
by failing to conduct an inquiry into his competence to stand trial and he was denied
effective assistance of counsel through counsel's failure to raise the issue of his
competency. We affirm.

 The indictment under which appellant was tried contained two counts. The first
count alleged possession of methamphetamine with intent to deliver. The second count
alleged possession of marihuana. The judgment also contained an enhancement
paragraph alleging a prior felony conviction in federal court. Over his plea of not guilty, the
jury found appellant guilty of both counts and found the enhancement paragraph true. The
trial court assessed punishment at 99 years confinement on count one and two years
confinement on count two, to be served concurrently. 

 A defendant is presumed to be competent to stand trial unless proven incompetent
by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 46B.003(b) (Vernon
2006). A person is incompetent to stand trial if he does not have sufficient present ability
to consult with his lawyer with a reasonable degree of rational understanding, or a rational
as well as factual understanding of the proceedings against him. Tex. Code Crim. Proc.
Ann. art. 46B.003 (Vernon 2006). If evidence suggesting the defendant may be
incompetent comes to the attention of the trial court, it must determine, sua sponte, by
informal inquiry whether there is some evidence from any source that would support a
finding that the defendant may be incompetent to stand trial. Id. art. 46B.004(c). A
competency inquiry is not required, however, unless the evidence is sufficient to create a
bona fide doubt in the mind of the judge whether the defendant is legally competent. 
McDaniel v. State, 98 S.W.3d 704, 710 (Tex.Crim.App. 2003) (applying former Article
46.02, Code of Criminal Procedure). (1) Evidence is usually sufficient to create a bona fide
doubt regarding competency if it shows "recent severe mental illness, at least moderate
mental retardation, or truly bizarre acts by the defendant." Id. 

 The record reflects the trial court engaged in some questioning of appellant and his
counsel about their level of communication, and the court's comments suggest that the
subject may have been discussed off the record. See Lawrence v. State, 169 S.W.3d 319,
322 (Tex.App.-Fort Worth 2005, pet. ref'd) (discussing nature of informal inquiry into
competence). We view appellant's complaint on appeal as challenging the trial court's
failure to formally suggest he may be incompetent to stand trial, Art. 46B.004(b), or take
the next procedural step and appoint an expert to evaluate appellant. Art. 46B.005(a). We
review a trial court's decision not to appoint an expert to examine a defendant under an
abuse of discretion standard. See Young v. State, 177 S.W.3d 136, 139 (Tex.App.--Houston [1st Dist.] 2005, no pet.) (denial of psychiatric examination); Lawrence, 169
S.W.3d at 322 (decision not to conduct competency hearing).

 The events on which appellant relies to show trial counsel and the trial court should
have pursued the issue of appellant's competency include numerous instances of
unsolicited comments by appellant during the trial. His brief also asserts that portions of
appellant's testimony was "nonsensical," and points to his statement to the trial court that
he "sometimes . . . didn't understand he was - like what [defense counsel] was talking
about." On appeal appellant does not contend the record shows recent severe mental
illness or moderate retardation. His argument is that his conduct at trial was sufficiently
bizarre to raise a bona fide doubt as to his competency.

 When a defendant makes improper comments or outbursts during trial, courts look
to the content of the statement, not merely the fact the defendant violated rules of
procedure or courtroom decorum. Moore v. State, 999 S.W.2d 385, 395 (Tex.Crim.App.
1999); LaHood v. State, 171 S.W.3d 613, 619 (Tex.App.-Houston [14th Dist.] 2005, pet.
ref'd). Our examination of appellant's conduct at trial must focus on whether it was an
indication appellant was incompetent to stand trial under the statutory standard. Tex. Code
Crim. Proc. Ann. art. 46B.003(a) (Vernon 2006); Moore, 999 S.W.2d at 395.. 

 The record shows most of appellant's unsolicited comments occurred during voir
dire. His brief lists fourteen instances. We list representative examples.

 Prosecutor: So I'm going to ask the group as a whole - do you believe that
possession of meth should be a crime?

 Appellant: Yes. I do. I do. 

 * * *

 Prosecutor: Because you haven't heard any evidence yet whether he is or
he isn't [Guilty.] . . . Until I do that, he is presumed to be innocent. 

 Appellant: I'm guilty, though. 

 * * *

 Prosecutor: [D]oes everybody know what paraphernalia is? 

 Venireperson: Scales.

 Prosecutor: Scales. 

 Venireperson: Baggies.

 Prosecutor: Baggies.

 Vinireperson: Pipes. 

 Appellant: Writing tablets.

 Prosecutor: Writing tablets, things of that nature. 

During defense counsel's examination of the venire, this exchange occurred:

 Appellant: You [defense counsel] said not a lot of peers as far as drugs. I'm
not living in Potter County.

 Defense counsel: Right. That was my point. Thank you. And Mr. Rojas is
going to help me out from time to time.

 Appellant: Sorry.

 Defense counsel: It is his case. So I appreciate all the help I can get. 

 Appellant also offered his views of the benefits of the legalization of drug use and
of the differing treatment of drug users in other parts of the world. While his lawyer was
discussing drug enforcement policy with venire members, appellant asked, "Can I say
something, [counsel]?" When his lawyer responded positively, appellant gave what his
brief calls a "soliloquy," in which he further expounded his opinions on federal drug policy
and related subjects. In total, the statement occupies more than a page of the reporter's
record.

 After this lengthy statement from appellant, the prosecution voiced an objection to
his conduct. Out of the presence of the jury, the trial judge admonished appellant about
speaking up during the proceeding. He instructed appellant to communicate with his
attorney in writing, noting "you guys seem to be communicating well. And I want to
encourage that. But I don't want you to say those things out loud in front of the jury, okay?" 
The record shows the instruction was largely effective. Appellant did make additional
isolated comments during the presentation of the State's case. Each of these comments
were relevant to the issue being addressed. 

 Appellant initially stated he would not testify during the guilt-innocence phase but
decided he would testify after consulting with his attorney. He testified to his history and
to events surrounding his arrest. His answers tended to go beyond the question asked,
prompting objections that the answers were not responsive. (2) Appellant seized any
opportunity to express his view that police conspired to frame him. 

 Having reviewed the entire record, we cannot agree that appellant's conduct at trial
necessarily should have raised in the trial court's mind a bona fide doubt that he had the
ability to meaningfully consult with his attorney or had a rational and factual understanding
of the proceedings against him. See Tex. Code Crim. Proc. Ann. art. 46B.003(a) (Vernon
2006). His comments, while procedurally improper and almost certainly unwise, evidenced
a proper understanding of the proceeding and the factual basis for his prosecution. 
Appellant's statement to the trial court that he didn't always understand what counsel told
him fails to show an inability to consult with "a reasonable degree of rational
understanding." See Moore, 999 S.W.2d at 394 (assertion by defense counsel of
unspecified difficulties in communicating with client not sufficient to require competency
hearing). Appellant's tendency to interject his thoughts and go beyond the questions asked
is similar to the conduct of the defendant in Lawrence. The Fort Worth Court of Appeals
concluded such conduct revealed the defendant "simply wanted his day in court and
wanted an opportunity to tell his story his way." 169 S.W.2d at 322. Appellant expressed
this very desire just before his testimony by stating: "All I want to do is tell this jury that I
have been set up, and these people have used me." The trial court did not abuse its
discretion in failing to conduct further informal inquiry or appoint an expert to evaluate
appellant. We overrule appellant's first issue. 

 The same analysis applies to appellant's claim of ineffective assistance of counsel
based on his trial counsel's failure to raise the issue of his competency. Nothing in the
record shows counsel observed or otherwise was aware of conduct different than that we
have recounted. Jackson v. State, 973 S.W.2d 954, 955 (Tex.Crim.App. 1998) (claim for
ineffective assistance of counsel must be affirmatively supported by the record). We
overrule appellant's second issue and affirm the judgment of the trial court.


 James T. Campbell

 Justice





Publish.
1. See Richardson v. State, No. 01-04-00281-CR, 2005 WL 267708 at *2 n.3
(Tex.App.-Houston [1st Dist.] Feb. 3, 2005, no pet.) (applying McDaniel "bona fide doubt"
standard under Art. 46B.004).
2. On one occasion appellant questioned the relevance of questions from his own
attorney. The prosecutor agreed, raising an objection on that basis. The objection was
sustained. 



Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00105-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 



NOVEMBER
17, 2010

 



 

JOHN BETLISKEY, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 147TH DISTRICT COURT OF TRAVIS
COUNTY;

 

NO. D-1-DC-10-904002; HONORABLE WILFORD FLOWERS, JUDGE



 



 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, John Betliskey,
was convicted of aggravated assault causing bodily injury by using or
exhibiting a deadly weapon.[1]  During the punishment portion of the trial,
the jury found the allegations of the enhancement paragraph of the indictment
true and sentenced appellant to confinement in the Institutional Division of
the Texas Department of Criminal Justice for a term of life and assessed a fine
of $10,000.  Appellant
appeals raising three issues.  We
will affirm.

 

Factual and Procedural Background

            Appellant
and Gilda Garcia Ruiz lived together in Austin, Texas.  On November 26, 2008, appellant and Ruiz had
an argument.  As a result of the
argument, appellant attacked Ruiz and began to strangle her.  Ruiz testified that she was unable to remove
appellants hands from around her neck, and she felt as if she could not
breathe.  At some point during the
struggle, Ruiz urinated on herself.  As
the struggle continued with appellant on top of Ruiz, Ruiz found herself on her
stomach when she felt wetness on her face. 
Ruizs face was bleeding from bites inflicted by appellant.  Ruiz described how appellant picked her up
off of the floor by her neck while strangling her and wrenching her neck.  After falling back to the floor, Ruiz tried
to strike appellant with a stool.  Ruiz
testified that she regained consciousness and found herself across the room
from where she last remembered. 
Eventually, Ruiz got out of the grasp of appellant.  Ruiz asked appellant why he was doing this
and stated she loved him.  At this point,
appellant got up, and Ruiz took the opportunity to run from the house.

            Ruiz
fled to the home of Victor Valdez, appellant and Ruizs neighbor.  Valdez testified that Ruiz arrived at his
home in a very excited and upset state. 
Valdez immediately noticed Ruiz had marks and bruising on her face.  After Ruiz had been in his home for a short
period of time, appellant began knocking on the door.  When Valdez did not answer the door,
appellant began pounding on it.  Valdez
eventually went outside and spoke with appellant.  Appellant immediately accused Valdez of
having sexual relations with Ruiz. 
Valdez testified that appellant appeared extremely angry.  Ruiz eventually left Valdezs home through
the back door.  

            After
escaping from appellant, Ruiz was taken to the hospital by her mother.  The attending emergency room doctor, Stefan
Hood, testified about his observations of Ruiz on the night in question.  During his testimony, Hood opined that an
individuals hands, when used to strangle someone, would qualify as a deadly
weapon.  Appellants trial counsel
cross-examined Hood extensively regarding Ruizs appearance when examined and
whether or not she appeared to be suffering from any serious bodily
injury.  

            During
the guilt-innocence portion of the trial, the State introduced a number of
photographs that depicted Ruizs injuries. 
Of particular note were three sets of photographs that, according to the
record, showed the same areas of Ruizs body at different times.  Appellant objected that the second and third
set of these photographs were cumulative and their probative value was outweighed
by the danger of unfair prejudice.  The
trial court overruled the objections, ruling that they demonstrated the degree
of injury by showing the affected areas at different times.  

            After
hearing the evidence, the jury found appellant guilty of aggravated assault
causing bodily injury by using or exhibiting a deadly weapon.  During the punishment portion of the trial,
appellant pleaded true to the enhancement paragraph.  After the State had closed the evidence on punishment,
appellants stepmother testified on his behalf. 
During her testimony on direct examination, she answered some questions
about the impact of appellants criminal history on his deceased father.  During the States closing argument on
punishment, reference was made to the testimony regarding the impact of appellants
criminal history on his father.  This led
to an objection by appellant.  The trial
court overruled the objection.  The jury
found the punishment enhancement allegation true and assessed appellants
punishment at confinement for life in the ID-TDCJ and a fine of $10,000.  

            Appellant appeals by three issues contending that 1) the evidence
is insufficient to support the judgment; 2) the trial court erred in admitting
certain cumulative photographs of Ruiz; and 3) the trial court erred in
overruling appellants objection to the improper jury argument of the State.  Disagreeing with appellant, we will affirm
the judgment of the trial court.

Sufficiency of the Evidence

            As
an initial consideration, we observe that appellants appeal contends that the
evidence is both legally and factually insufficient.  Appellants brief was prepared and filed
before the Texas Court of Criminal Appeals issued its opinion in Brooks v.
State, No. PD-0210-09, 2010 Tex.Crim.App.
LEXIS 1240 *25-*26 (Tex.Crim.App.
Oct. 6, 2010), wherein the court ruled that there is no distinction between a claim of legal as opposed to factual insufficiency of the
evidence.  Further, the court expressly
overruled Clewis v. State, 922 S.W.2d
126 (Tex.Crim.App. 1996), and its purported
application to factual sufficiency questions. 
Id. at *57.  The court appears to urge the reviewing court
to apply a more rigorous application of the sufficiency test set forth in Jackson
v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979).  See id.
at *58. 
Therefore, we will review appellants claims of evidentiary sufficiency
under the standard of review set forth in Jackson.  See 443 U.S. at 319.

 

Standard of Review

            In
assessing the sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Ross v. State, 133 S.W.3d
618, 620 (Tex.Crim.App. 2004).  We measure the legal sufficiency of the
evidence against a hypothetically correct jury charge.  See Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).  Finally, when reviewing all of
the evidence under the Jackson standard of review, the ultimate question
is whether the jurys finding of guilt was a rational finding.  See Brooks,
2010 Tex.Crim.App. LEXIS 1240 at *37, *39-*40
n.26 (discussing Judge Cochrans dissent in Watson v. State, 204 S.W.3d
404, 448-50 (Tex.Crim.App. 2006), as outlining the
proper application of a single evidentiary standard of review).[2]

Analysis

            To
prove aggravated assault causing bodily injury by using or exhibiting a deadly
weapon, as charged in the indictment, the State must prove:

1)    on or about November 26, 2008

2)    appellant

3)    intentionally, knowingly, or
recklessly

4)    caused bodily injury to

5)    Gilda Garcia Ruiz

6)    by grabbing Ruiz on or about the neck

7)    and appellant did use or exhibit a
deadly weapon

8)    to-wit: his hands.

See Tex.
Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2);[3]
Malik, 953 S.W.2d at 240.  The Penal Code defines bodily injury as
physical pain, illness, or any impairment of physical condition.  See § 1.07(a)(8)(Vernon
Supp. 2010).  Further, the Penal Code
defines deadly weapon, for purposes of this analysis, as anything that in
the manner of its use or intended use is capable of causing death or serious
bodily injury. See § 1.07(a)(17)(B).  Finally, serious bodily injury is defined
in the Penal Code, in part, as bodily injury that creates a substantial risk
of death.  See § 1.07(a)(46).  

            Appellants
evidentiary sufficiency argument focuses on the question of the deadly
weapon.  Specifically, appellant contends
that there was no evidence that appellants hands were capable of causing
serious bodily injury in the manner of their use.  The fact that appellant stops his contention
at that point in the definition of a deadly weapon is illustrative of the
failure of appellant to fully understand the import of the testimony of Dr.
Hood.  The full definition of a deadly
weapon includes not only the manner of the use or intended use of the alleged
deadly weapon but also the capability of the alleged deadly weapon to cause
death or serious bodily injury.  See
§ 1.07(a)(17)(B).

            Whether
an item is a deadly weapon is determined by reviewing a totality of the facts
of the case.  See Blain v.
State, 647 S.W.2d 293, 294 (Tex.Crim.App.
1983).  To show that the hands are a
deadly weapon, the State need not show that the hands actually caused serious
bodily injury so long as the evidence shows that the hands in the manner of
their use were capable of causing serious bodily injury.  See Jefferson v. State, 974 S.W.2d 887, 892 (Tex.App.Austin
1998, no pet.).  The State produced the
testimony of Dr. Hood, who was qualified by experience, education, and training
to render an expert opinion about appellants use of his hands as a deadly
weapon.  See Tex. R. Evid.
702.[4]  Hood testified that the use of the hands to
strangle a victim by interfering with the blood or air flow could cause serious
bodily injury.  Further, the State also
produced the testimony of Dr. David Dolinak, Chief
Medical Examiner for Tarrant County, Texas, who testified that the hands can be
used as a deadly weapon.  Dolinaks opinion was rendered after extensive questioning
by the State regarding the evidence of manual strangulation apparent on
Ruiz.  

            When
all of this evidence is reviewed in the light most favorable to the verdict,
the jurys determination that appellant was guilty beyond a reasonable doubt
was not an irrational act.  See Brooks, 2010 Tex.Crim.App.
LEXIS 1240 at *37, *38-*39 n.26.  Accordingly, appellants first issue is
overruled.

 

 

Photographs

            Appellants
second issue complains about the introduction of three series of photographs
depicting the injuries suffered by Ruiz. 
The first series of photographs, States Exhibits 8 through 13, were
introduced without objection.  The
testimony showed that those photographs were taken at the hospital on the night
of the assault.  The State then moved to
introduce States Exhibits 14 through 19. 
Appellant objected that exhibits 16 thru 19 were cumulative and that
their probative value was outweighed by their prejudicial impact.  The trial court, after ascertaining that the
photographs were taken at a later date than the first exhibits, overruled
appellants objection.  The third series
of photographs were States Exhibits 20 through 25.  These photographs were the last photographs
taken of Ruizs injuries and were taken on December 1, 2008.[5]  Appellant again objected that these
photographs were cumulative and that their probative value was outweighed by
the prejudicial impact.  

Standard of Review

            In
Gallo v. State, 239 S.W.3d 757, 762 (Tex.Crim.App.
2007), the Texas Court of Criminal Appeals set forth the standard of
review.  First, the admissibility of a
photograph is left to the sound discretion of the trial judge.  Id. at 762.  A photograph is generally admissible if
verbal testimony as to the matters depicted in the photograph would be
admissible.  Id.  However, even if a photograph is relevant and
admissible, it may be excluded if the probative value of the photograph is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence. 
Id. (citing Rule 403).  Rule 403 favors admission of relevant
evidence and carries a presumption that relevant evidence will be more
probative than prejudicial.  Id.
(citing Williams v. State, 958 S.W.2d 186, 196 (Tex.Crim.App.
1997)).  Finally, we note that a trial
courts ruling on a Rule 403 objection is reviewed under an abuse of discretion
standard as set forth in Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on rehg).  That is to say, to be erroneous, the trial
courts decision must be outside the zone of reasonable disagreement.  Id.

Analysis

            Initially,
we observe that appellants argument infers that he is contending that the
photographs were not relevant.  The State
asserts that the objection made at the time the exhibits were offered did not
contain any statements that can be construed to be an objection to the
admissibility of the exhibits on the basis of relevance.  Our review of the record reveals that appellant
objected to States Exhibits 16 through 25 on two grounds.  First, appellant objected that the exhibits
were cumulative of the other photographs previously admitted.  Second, appellant objected, as stated above,
that the probative value of the second and third sets of photographs was substantially
outweighed by their prejudicial impact. 
The first objection is actually part of the analysis for the second
objection, a Rule 403 objection.  See
Rule 403.  The second objection is
clearly a Rule 403 objection.  Therefore,
we agree with the State, and to the extent appellant is
attempting to argue that the photographs are not relevant, that error was not
preserved for appeal.  See Tex. R.
App. P. 33.1(a)(1)(A).

            All
of the photographs of which appellant complains show Ruizs neck, arms, face,
eyes, and the side of her head.  The
State offered the different sets of photographs to show the severity of the
wounds inflicted by appellant based upon how they appeared at different points
in time.  We view these photographs in
light of the analysis set forth by the Texas Court of Criminal Appeals in Williams,
958 S.W.2d at 196 and Rule 403.  There
were six photographs in the original series and then a total of ten photographs
in the second and third series.  The
record before this Court demonstrates that the photographs are black and white
and do not depict any gruesome scenes.  A
review of the record demonstrates that the amount of time spent offering and
discussing these photographs did not unduly delay the trial.  Although appellant is correct when he points
out that many of the photographs are of the same area of Ruizs body, they do
not demonstrate the same degree of injury, as they were taken at different
times.  This is a factor the jury could
use in determining the amount of force appellant used in strangling Ruiz.  Likewise, the photographs of the bite marks
at different times demonstrates the apparent anger of appellant at the time of
the assault by the lasting imprint of his teeth on Ruizs arm and head.  This evidence goes directly to the totality
of the circumstances of the assault.  See  Blain,
647 S.W.2d at 294.  All in all, we cannot
say that the probative value of these exhibits is substantially outweighed by
the prejudicial impact of these exhibits on the jury.  See Gallo, 239
S.W.3d at 764.  Therefore, the
trial courts decision to admit the photographs did not fall outside the zone
of reasonable disagreement.  See Montgomery,
810 S.W.2d at 391. 
Accordingly, the trial court did not abuse its discretion in admitting
the photographs, and appellants second issue is overruled.  See id.

Improper Argument

            Appellants
last issue contends that the State engaged in an improper jury argument during
the punishment phase of the trial.  The
argument in question centered upon testimony elicited by appellant from his
stepmother.  The essence of the testimony
was that appellants father had a very difficult time with appellants prior
criminal conviction.  Appellants father
had several heart attacks, had to have a pacemaker put in, and died within a
few months of appellants latest arrest. 
Appellant did not mention the testimony during his final argument on
punishment.  However, during the States
closing argument the following statement was made:

I felt bad for the stepmother because you know who did that to
her?  He did.  Can you imagine that?  You know who did that to his father?  You shouldnt feel bad for him because his
father died while he was in jail for a second felony crime.  You should hold him responsible for
that.  He did that to his stepmother, he
did that to his father.

At that time, appellant
objected saying, Judge, thats improper, I object.  The trial court then overruled the objection
without comment.  The State did not
further refer to the testimony during closing argument.

            Appellant
now contends that the argument was improper because the argument was manifestly
improper and did not fall within any of the recognized areas for proper jury
argument.  Appellant also contends that
the argument was an attempt to accuse appellant of the extraneous offense of
homicide against his father.  

            Appellant
has two manifest problems with his analysis of the alleged improper
argument.  First, the objection lodged
was nothing more than a general objection and may not be sufficient to preserve
error for appeal.  See Tex. R. App. P. 33.1(a)(1)(A); Buchanan v. State, 207 S.W.3d 772, 775 (Tex.Crim.App. 2006). 
If the legal basis for the objection is obvious to the trial court and
to opposing counsel, then a general objection may preserve error.  Id. 
Therefore, if we assume the trial court understood the objection to be
addressing the fact that the argument did not go to one of the four recognized
areas of proper jury argument[6]
as set forth in Gallo, 239 S.W.3d at 767, then we have a situation where
the issue on appeal does not comport with the objection made at trial.  Dixon v. State, 2
S.W.3d 263, 273 (Tex.Crim.App. 1999) (op. on rehg).  This
is because his complaint before this Court is that the argument attempted to
charge appellant with an extraneous offense. 


            The
result is that either appellant made a general objection that did not preserve
anything for appeal, Buchanan, 207 S.W.3d at 775, or appellants current
complaint does not comport with the objection at trial and nothing is preserved
for appeal.  Dixon, 2 S.W.3d at 273. 
Under either scenario, we overrule appellants third issue.

 

 

Conclusion

            Having
overruled appellants issues, we affirm the judgment of the trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

            

Do not publish.  











[1]
See
Tex. Penal Code Ann. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2010).





[2]
We note that this Court has at times quoted Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988) for the proposition that we had to uphold the verdict of the jury unless
it was irrational or unsupported by more than a mere modicum of evidence.  We view such a statement, insofar as a
modicum of evidence being sufficient evidence, as contrary to a rigorous
application of the Jackson standard of review urged by the court in Brooks.

 





[3]
Further reference to the Texas Penal Code will
be by reference to section ____, sec. ___, or § ___.





[4] Further reference to the Texas Rules of Evidence will
be by reference to Rule ___ or rule ___.





[5] We note that this date would indicate that the third
series of photographs were taken at a point in time between the first and
second series of photographs.





[6] 1) summation of the
evidence; 2) reasonable deductions from the evidence; 3) answer to arguments of
opposing counsel; and 4) pleas for law enforcement.  Even if appellants complaint regarding
proper jury argument was preserved, we note that the States argument referred
to evidence appellant himself elicited from his stepmother.  The State then made a plea for law
enforcement based on this evidence.  Gallo,
239 S.W.3d at 767.