# MEMORANDUM OPINION

No. 04-07-00337-CR

Lawrence **DALE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-8904A
Honorable Pat Priest, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed:  June 18, 2008

AFFIRMED

Appellant Lawrence Dale was convicted by a jury on one count of robbery, enhanced by

two prior felonies.  The trial court subsequently sentenced Dale to forty-five years confinement

in the Institutional Division of the Texas Department of Criminal Justice.  On appeal, Dale

asserts (1) the trial court failed to sua sponte hold a competency hearing; (2) ineffective

assistance of counsel for failure to request a competency hearing; and (3) the trial court erred in admitting evidence of an extraneous offense. We affirm the judgment of the trial court.

### FACTUAL BACKGROUND

On September 10, 2005, at approximately 2:00 a.m., taxi cab driver Phillip Charo was driving in downtown San Antonio when he saw two men trying to catch his attention. Unable to stop, Charo yelled at the two men that he would return for them. After circling the block, Charo returned to the same location and, on the other side of the street, noticed a young man, Eric Zamora. Charo stopped for Zamora who was bloodied and reported that "he had just gotten jumped." Zamora described the two individuals, one was black with a stocky build and the other was Hispanic. As Zamora pointed in the direction in which the two men had run, Charo saw the two men that previously tried to "flag him down." During his testimony, Charo acknowledged that Zamora was really hurting and that, although Zamora did not actually point out the individuals, they matched the description Zamora had just given.

Zamora testified that as he was walking home from work, the two men approached him and asked for change. Zamora identified Dale as the black male that kept saying "We're hungry, and we want to get something to eat." After Zamora told them that he did not have any money, both men started making sexual propositions in exchange for money. Zamora pulled out his wallet and showed both men that he did not have any money before "[Dale] hit me . . . in the face" and then started kicking him in the face, chest and stomach. At the same time, Co-Defendant Anthony Ortegon was kicking him in the back of the head. Again Dale sexually propositioned Zamora and when he refused, Dale continued to physically assault him. Ortegon instructed Zamora to give him his wallet, and according to Zamora, the two men fled with Dale picking up coins that had dropped from Zamora's wallet.

Charo took Zamora home and then returned downtown. He again saw the two individuals from earlier that evening, still looking for a ride. As the black man tried to get into his cab, Charo told them he would return for them. Instead of returning, Charo located police officers and reported what had happened. San Antonio Police Officer Richard Richardson followed Charo to the location and detained the two individuals. As a result of the detention, Richardson obtained Zamora's wallet, located in Dale's right-front pocket.

### COMPETENCY HEARING

In his first two issues on appeal, Dale asserts the trial court failed to conduct a competency hearing when the evidence before the court was sufficient to raise a bona fide doubt as to Dale's competence to stand trial.

**A.      Standard of Review**

We review a trial court's decision to not conduct a competency inquiry under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); *Lawrence v. State*, 169 S.W.3d 319, 322 (Tex. App.—Fort Worth 2005, pet. ref'd). A trial court abuses its discretion only if its rulings are arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

**B.      Texas Code of Criminal Procedure Article 46**

Article 46B.003 of the Texas Code of Criminal Procedure provides that a person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person. Moreover, a defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art 46B.003

(Vernon 2006). We note that insanity and incompetency are controlled by separate statutes, and are similar but raise distinct issues of mental status with different definitions and different legal ramifications. *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987) (insanity and competency are two separate concepts: insanity involves issue of defendant's mental status at time of offense while competency involves issue of mental status at time of trial).

Either party or the trial court may suggest that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. Art. 46B.004(a). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(b). Additionally, upon suggestion that the defendant may be incompetent, the court must conduct an informal inquiry into whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c).

Some evidence is defined as "a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980). Simply stated, "the question for the trial court is whether with respect to incompetency there is 'any' evidence or 'no' evidence." *Id*. If the court determines after an informal inquiry that evidence exists to support a finding of incompetency, the court must order an examination to determine whether the defendant is incompetent to stand trial in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 46B.005(a).

## C.    Analysis

On appeal, Dale provides a litany of citations to the record asserting examples of Dale's incompetence before the trial court. Importantly, however, although both Dale and trial counsel

asserted that Dale was competent at trial, Dale argues on appeal that the evidence is contrary to those assertions. Dale relies primarily on his diagnosis of schizophrenia and his self-defeating behavior, specifically his insistence on testifying before the jury.

Prior to taking the stand, Dale's counsel informed the trial court that Dale wanted to testify against counsel's advice. Counsel warned Dale that his testimony would "open the door" to otherwise inadmissible evidence of a prior robbery. The court explained that "[j]ust the simple fact that you testify is not going to allow them to bring in the other case. But you might, by what you say, when you testify." Dale responded, "I understand. I am competent enough to know." Defense counsel then cautioned, "And you understand, too, that they're going to bring up your prior felonies?" To which Dale responded, "It's okay."

Before the jury, defense counsel elicited information that Dale was currently receiving disability checks based on his diagnosis of schizophrenia. Dale also testified about his prior conviction of aggravated assault and deferred adjudication of indecency with a child. At trial, Dale testified that he and Ortegon were unable to get a ride from a cab and that they had asked Zamora for some money. When Zamora told them that he did not have any money, Dale asked Zamora if they "could get acquainted, like go to his apartment . . . [a]nd then he looked at me, you know, with a bold look of some kind of dissatisfaction. So that's when I hit [Zamora] once and he fell down. And I kicked him and was saying like, What's wrong with that, you know?" Dale explained that while Zamora was sitting down on the ground, Ortegon grabbed Zamora's wallet and ran off and Dale took off after Ortegon. Dale was adamant that he had only asked about "sexual relations" and denied picking up any coins or having anything to do with the taking of money from Zamora.

Dale argues that his testimony and choices at trial, in conjunction with his diagnosis of schizophrenia, was some evidence that rationally may lead to a conclusion that appellant was incompetent. We disagree. Dale's prior diagnosis of schizophrenia is not, standing alone, sufficient to raise the issue of incompetency to stand trial. *See Ex parte Yarborough*, 607 S.W.2d 565, 567 (Tex. Crim. App. 1980) *repudiated on other grounds*, *Manning v. State*, 730 S.W.2d 744 (Tex. Crim. App. 1987). Moreover, after reviewing the entire record, including all of Dale's testimony, although disjointed, his testimony does not indicate he was unable to rationally consult with his attorney. *See Lingerfelt v. State*, 629 S.W.2d 216, 217 (Tex. App.—Dallas 1982, pet. ref'd). To the contrary, his testimony shows that he understood his attorney's advice and the potential consequences of not taking his advice, but chose not to follow the same. In fact, Dale's testimony actually supports that he held a rational, as well as factual, understanding of the proceedings. Accordingly, after a review of the record, we conclude that the trial court did not abuse its discretion by failing to sua sponte conduct a competency examination because no evidence was raised requiring the trial court to do so. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(b). Because the trial court did not abuse its discretion, we overrule Dale's first two issues on appeal.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Dale next asserts his trial counsel's failure to request a competency hearing is tantamount to ineffective assistance of counsel under the Sixth Amendment. *See* U.S. CONST. AMEND. VI. As argument for Dale's assertion that no conceivable strategic reason exists for trial counsel's failure to pursue the issue of Dale's competency to stand trial, Dale points to counsel's initial remarks before the jury:

> First off, let me make a couple of housekeeping statements. If you see my client who has involuntary hand gestures, it's part of his illness. So — just so you — in

case you see him doing that. And me, I have diabetes and I have neuropathy, so you see me kicking my leg. It doesn't have anything to do with the evidence, it's just our physical defect.

Counsel then proceeded to remind the jury that there was another version of the events than was presented by the State.

**A.      Standard of Review**

To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate, by a preponderance of the evidence, that: (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A claim of ineffective assistance of counsel must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson*, 9 S.W.3d at 813; *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel because the undeveloped record generally deprives counsel of chance to explain their actions). "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

Counsel's conduct is reviewed with great deference and without "the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813. In assessing any ineffective assistance claim, we apply a strong presumption that trial counsel was competent and that trial counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *Id*.; *see also Goodspeed*, 187 S.W.3d at 392 ("Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent

attorney would have engaged in it.'"); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

**B.      Analysis**

While the case was pending before the trial court, Dale's trial counsel filed pre-trial motions, vigorously cross-examined the State's witnesses, objected to questionable evidence and made arguments to the jury.  The record is simply devoid of any explanation of counsel's thought process or trial strategy.

Because trial counsel has not had the opportunity to respond to Dale's allegations of ineffective assistance, Dale has failed to overcome the strong presumption that his trial counsel acted reasonably.  *See Mallett v. State*, 65 S.W.3d 59, 67 (Tex. Crim. App. 2001).  Further, we can find no act or omission of trial counsel that could be described as "outrageous."  *See Goodspeed*, 187 S.W.3d at 392.  Ultimately, the record is silent as to any harm to Dale.  This court will not speculate as to what counsel's trial strategy or reasons might have been with regard to the alleged error and we, therefore, overrule appellate issue number three.

**EXTRANEOUS OFFENSE**

Prior to Dale's testimony, defense counsel explained, on the record, that by electing to testify, Dale was potentially opening the door to otherwise inadmissible evidence.[1]   Dale

---

[1]   Immediately prior to Dale's testimony, the State requested the extraneous offense testimony be admissible pursuant to the cross examination of Zamora:

| | |
|---|---|
| Counsel: | But you never heard my client say, Take the wallet or anything like that, correct? |
| Zamora: | No.  I don't think so. |
| Counsel: | Okay.  For all you may have known, Mr. Ortegon acted on his own when he grabbed your wallet from you; isn't that correct? |

After Zamora's testimony was completed, the State argued that based on defense counsel's question, Texas Rule of Evidence 404(b) allowed the State to elicit testimony regarding another victim an hour earlier who was also robbed of money.  The State urged that defense counsel had suggested that there was insufficient evidence to show that his client had intended to participate in the robbery and thus the other robbery, so close in time, where Dale had the

acknowledged the same and affirmed his desire to testify. The trial court ruled the testimony was more prejudicial than probative and did not allow the State to present any evidence of the prior assault.

## A.     Texas Rule of Evidence 404(b) Hearing

After Dale's direct examination, the State requested a hearing outside the presence of the jury and argued that Dale opened the door to the question of intent because a robbery earlier the same evening shows plan, motive and opportunity. Upon request, the State proffered the following:

> That these two men invited the complainant into an apartment off of Broadway. That he was walking down the street, invited them in for a smoke. It will be [Dale] who will be the leader here. [Ortegon] who will be asking permission if he can make sexual advances on [the complainant]. [The complainant] resists, they choke him out.

The State continued that before the victim passed out, Dale and Ortegon obtained his wallet and ATM card. When the victim awoke, he heard Dale saying

> No, we can't let him go. We can't let him go. And [Ortegon] saying, No, let's let him go. They stick him in the shower, they push him out the back while he is tied up, hands bound, feet bound, and the complainant runs off and that's when these two defendants take off up the street and come into contact with [Zamora].

The defense argued the testimony was more prejudicial than probative and the evidence should not be admitted. The trial court held that Dale's testimony that he committed an assault, but not a robbery, raised the lesser included offense of simple assault and thus, the State was entitled to offer the extraneous offense evidence.

The trial court admonished the jury regarding the limited use for which the jury could consider the evidence of the prior incident:

---

victim's wallet in his pocket, would directly contradict and rebut the defensive theory and go directly to the issue of intent.

The State is going to offer questions of this witness, and presumably later evidence from other witnesses regarding an alleged additional incident on the same night.

The Court is allowing the State to offer this evidence for the very limited purpose of the jury being allowed to use it, if you believe it to be useful, if you believe this evidence of another offense beyond a reasonable doubt, and if you believe that it sheds light on the intent of Mr. Dale with respect to the offense that is charged against him in the case we are trying. This evidence is going to relate to a case we are not trying.

And so it — it is being admitted only for the purpose of assisting the jury, if it does assist you, in determining Mr. Dale's intent with respect to the offense that you are trying.

**B.    Testimony**

During the State's questioning, Dale admitted that he and Ortegon invited the victim into Ortegon's apartment, seeking sexual relations, and locked the door behind him. Yet, Dale was adamant that the victim was free to leave and that he never demanded money from him. Dale admitted seeing Ortegon choke the victim, that they tied up his hands and his feet and put him in the shower; but Dale was insistent that it was Ortegon that pushed him out the back of the apartment and down some stairs. Dale also admitted that when the officers stopped them after the incident with Zamora, he had the prior victim's credit cards in his possession.

The State next called the prior victim to the stand. He testified that after leaving to get cigarettes, he met Ortegon and Dale on the street. After bumming a cigarette off the victim, Ortegon invited him to his apartment to smoke some pot. As they entered the property, Dale locked the wrought iron gate behind them and then also stood by the apartment door, leaned against the door and locked it. As they entered the apartment, Ortegon and Dale asked the victim for money and then took his wallet. He remembered being struck in the head, but could not identify whether it was Ortegon or Dale that struck him. The victim then explained that Ortegon asked Dale for permission. "[Ortegon] said, Is it okay?" and then the victim described Ortegon

approaching him again, put his arm around his neck and told him to just relax. He remembered passing out and eventually regaining consciousness.

> As soon as I woke up, I was laying face down — face down on the floor. My arms were tied behind my back, my legs were tied together, and my arms and legs were linked with — with a cord behind my back. I had blood all over me. I had vomited on myself. . . . And they were pacing in this room in and out looking at me, going back and forth arguing . . . [about] letting me go and what to do with me . . . [Ortegon] was insisting that — that they let me go — that he let me go . . . [and Dale] insisted that they couldn't.

Ortegon and Dale finally pushed the victim out the back of the apartment and down the stairs and left him on the ground, still tied up.

> Later, during the victim's testimony, the trial court again admonished the jury:

> I feel the need to tell the jury again, that this evidence is not the case we are trying. It is usable by the jury only if, first you find it be true beyond a reasonable doubt. And then only for the purpose of demonstrating, if it does, the intent of the defendant with respect to the case we are trying.

### C.    Analysis

Texas Rule of Evidence 404(b) prohibits the admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). Extraneous offenses may, however, be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1990). Extraneous evidence may also be admissible to rebut defensive theories raised by defense counsel's cross-examination of the State's witnesses. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (noting that rebuttal of defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)"); *Taylor v. State*, 920 S.W.2d 319, 321 (Tex. Crim. App. 1996) (holding that extraneous-offense evidence may be admissible when relevant to motive, intent, identity, and rebuttal of defensive theory).

More specifically, when the defendant's intent is in dispute, the admission of extraneous offense evidence is warranted when the required level of intent for the offense cannot be inferred from the act itself or if the defendant presents evidence to rebut the inference that the required intent existed. *See Prince v. State*, 192 S.W.3d 49, 56 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding that evidence of subsequent extraneous offenses made it more probable that defendant intended to commit robbery at time of the charged offense, and thus, was relevant to issue of intent); *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref'd). In cross-examining the State's witnesses and in Dale's testimony, the defense attempted to instill doubt about whether Dale intended to take the money from Zamora.

When defense counsel's cross-examination of Zamora brought Dale's intent into question as a defensive theory, it cast doubt upon an inference of intent from other uncontested direct evidence. The State then became entitled to prove intent through evidence of other crimes, wrongs, or acts. *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App—Austin 1996, pet. ref'd) (the facts of the charged offense and the extraneous offense must be substantially similar, but not exact). While we acknowledge that extraneous offenses by their very nature possess the potential to influence the jury, courts have long recognized that an impermissible inference of character conformity can be minimized through a limiting instruction. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). Here, the trial court gave not one, but two different instructions to the jury explaining the limited purpose for which the testimony could be used. Accordingly, although the testimony was graphic and highly prejudicial, Dale's taking the witnesses stand made the evidence more probative than prejudicial with regard to the issue of intent. Thus, we cannot say the trial court abused its discretion in admitting the evidence of the extraneous offense.

**CONCLUSION**

Appellant Lawrence Dale evidenced sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, as well as a factual understanding of the proceedings against him. Additionally, Dale has failed to overcome the strong presumption that his trial counsel provided effective assistance. Finally, Dale's defensive theory and his testimony justified the admission of the extraneous offense evidence. We, therefore, affirm the judgment of the trial court.

Rebecca Simmons, Justice

Do Not Publish