

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00237-CR

_____

THEODORE LEONARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 349th Judicial District Court
Houston County, Texas
Trial Court No. 07CR-189

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Theodore Leonard was convicted, in a trial before the court, of assault on a public servant.[1] Leonard's punishment range was enhanced by a prior felony conviction, and the trial court sentenced him to eighteen years' imprisonment.

He alleges the trial court erred in three respects, all of which relate to his competency to stand trial: (1) violation of his due process rights under the United States and Texas Constitutions by failing to order Leonard be evaluated for competency to stand trial, (2) failure to conduct an "adequate inquiry" into Leonard's competency to stand trial, and (3) denial of Leonard's motion suggesting incompetency and requesting an examination. We overrule the points of error and affirm the judgment and sentence.

## I.    Trial Court's Duty to Consider Competency

The prosecution and conviction of an accused while he or she is incompetent violates due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). The standard for determining competency to stand trial under the Due Process Clause of the Fourteenth Amendment is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). Texas employs this standard for the

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

2

determination of competency. TEX. CODE CRIM. PROC. ANN. art. 46B.003 (Vernon 2006). Under Texas law, the defendant is presumed to be competent and bears the burden to prove his or her incompetence by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003; *Smith v. State*, 51 S.W.3d 806, 811 (Tex. App.—Texarkana 2001, no pet.). An inquiry into competency must be conducted when there is evidence "sufficient to raise a *bona fide* doubt in the mind of the judge whether the defendant is legally competent." *Montoya v. State*, 291 S.W.3d 420, 424 (Tex. Crim. App. 2009); *see also Pate*, 383 U.S. at 385.

Either party, or the trial court, sua sponte, may suggest the defendant is not competent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(a) (Vernon 2006). If such a suggestion is made, the trial court shall conduct an "informal inquiry concerning whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(c) (Vernon 2006). After this informal inquiry, if the trial court finds evidence to support a finding of incompetency, the trial court shall order an examination of the defendant as to the defendant's competency to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.005(a) (Vernon 2006).

The plain language of Article 46B.004(c) allows for a determination by an "informal inquiry" of whether there exists evidence to support a finding the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c); *Montoya*, 291 S.W.3d 425. The duty

to conduct this informal inquiry, though, only arises when the trial court is presented with some evidence raising the issue of the defendant's competency to stand trial:

> If a trial judge has a *bona fide* doubt about the competency of the defendant, he or she shall conduct an informal inquiry to determine if there is evidence that would support a finding of incompetence. A *bona fide* doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation.

*Montoya*, 291 S.W.3d at 425. Only if, after this "informal inquiry," the trial court finds evidence supporting a finding of incompetency, shall an expert be appointed to examine the defendant to investigate the defendant's competency to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.005(a).[2] A trial court's decision not to conduct a competency hearing is reviewed for an abuse of discretion. *See Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A trial court abuses its discretion if its decision is arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

## II.    Evidence of Bona Fide Doubt

Leonard relies on statements made by his trial counsel before the trial court as evidence raising a bona fide doubt regarding Leonard's competency to stand trial.

When the trial court asked for announcements on readiness for trial, Leonard's defense counsel informed the trial court the defense was not ready and referred the court to Leonard's motion, filed that morning, which suggested Leonard was incompetent and requested an

---

[2]Leonard's second point of error complains the trial court did not perform an "adequate inquiry" into Leonard's competency. Leonard does not explain what he believes an adequate inquiry would be. We treat his complaint as complaining that a 46B.004(c) "informal inquiry" was not performed.

4

examination.  Counsel told the trial court the motion suggesting incompetency "kind of calls into question" Leonard's waiver of jury trial, executed about nine months earlier.[3]  Defense counsel continues:

> [M]y motion today kind of calls into question his intelligent waiver of a jury trial, too, because of some of the same things I'm still seeing today.  I guess I did not recognize them back then, but in the last week, trying to prepare for this [b]ench trial, I've been unable to communicate with him.  I don't think he's -- I think he understands what the charges are, but I don't think he understands the potential consequences of the proceedings.  I don't think he has been able to disclose to me pertinent facts, events in his state of mind.  And I've -- every time I talk to him he wants to talk about other events that have occurred prior to this.  He's -- I've not been able to actually -- in the last week been able to get a set fact pattern from him.  He hasn't been able to discuss legal strategies or options or anything like that.  And --
>
> THE COURT:   What do you mean he hasn't been able to discuss?
>
> [Defense Counsel]:   He just doesn't understand anything.  He doesn't understand.  When I bring up -- well, back when I first talked about his incompetency, he doesn't understand that if convicted of this, because of his prior record, he doesn't understand that he could be facing pen time.  He doesn't understand.  He doesn't understand how they can bring these charges against him.  And once again, he has not been able to disclose to me any of the facts of this situation because he wants to talk about facts from his divorce and things like that that have no relevance to this case.  Well, that have some relevance to this case, but not the facts to the case at hand.  And it came to my attention, Monday I discussed it with [the prosecutor], she indicated not that she thought he was incompetent but she thought that he had some mental deficiency possibly.
> . . . . [A]lso I've discussed it with his family, they agree with me that he does not understand what's going on.  He apparently used to be on medication and he's not on his medication anymore.  It may just be a necessity of getting him back on his medication so that he can understand what's going on, but he doesn't.

---

[3]We point out the motion suggesting incompetency makes no reference to Leonard's waiver of jury trial; the motion simply asks for an expert to be appointed to evaluate Leonard's competency; and in the event the trial court finds evidence of incompetency, an "incompetency trial" be convened.

We point out that later, when the trial court asked Leonard, he said he had never been treated for mental illness; he was on medication for "high blood pressure, glaucoma and diabetes." Leonard told the trial court he had "[q]uite a few health problems," but none of them involved mental illness.

The prosecutor clarified her comments to defense counsel about Leonard's mental status:

Judge, the comment I made with [defense counsel] at my office was that [Leonard's] crazy, and I followed it up with very quickly with not legally insane or incompetent. My dealings with Mr. Leonard have been when he don't -- and I think I told [defense counsel] this -- when he doesn't get the answer he wants, he becomes belligerent, Judge, and acts like a nut. I don't think he's incompetent. I don't think he's legally insane. I think this is the way he plays it every time he is in a criminal situation. I've dealt with him on three or four occasions. It's always the same.

Defense counsel told the trial court the suggestion of incompetency was not made by Leonard but by defense counsel, and the trial court stated, "[W]e've had a hearing with Mr. Leonard something like four times, at least four, . . . over two years."

Defense counsel told the trial court that Leonard was not cooperating with him in preparation for trial and that Leonard could not give counsel "any pertinent facts that I need to prepare." Counsel said he and Leonard had "talked about the case before," and Leonard was "different before, completely different." No explanation is made of this characterization.

The trial court then questioned Leonard.  Leonard told the court he was fifty-three years old and his education went up to the eleventh grade (the record is not clear whether he completed that level).  The trial court then questioned Leonard about the proceedings at hand:

> THE COURT:  Okay.  And do you understand what's going on here today?
>
> [Leonard]:  Some of it, Judge, I do and some of it I don't.  Because I think -- I think to my best ability, a lot of things that you don't even know about that was kind of iffy. Well, I'm not going to talk about it because it really don't pertain to another case.  It -- the part that really should be here is --
>
> THE COURT:  Okay.  Well, let's don't talk about the case.  But you understand what you're charged with?
>
> [Leonard]:  Yes, sir, I do.
>
> THE COURT:  Tell me, wh[at] are you charged with?
>
> [Leonard]:  Assault on a public servant.
>
> THE COURT:  Okay.  What does that mean to you?
>
> [Leonard]:  Well, that means that I've got to hit him or put my hands on him, which I didn't do.  He put his hands on me.  He assaulted me.
>
> THE COURT:  Okay.
>
> [Leonard]:  Because he knocked blood out of me.
>
> THE COURT:  All right.  And have you and your attorney been able to talk about that --
>
> [Leonard]:  Well, we --
>
> THE COURT:  -- what happened?

7

[Leonard]: We talked about it, but I don't see the issue that he's coming with.

THE COURT: Okay. Tell what you do not understand about that part?

[Leonard]: Well, what I don't understand, how can I be charged with -- with hitting a public servant when my hands was behind my back.

THE COURT: Okay.

[Leonard]: And I supposed to hit this guy hard enough to daze him, I can't understand that, Judge.

THE COURT: Okay.

[Leonard]: I can't understand it.

The court then asked the prosecutor the range of punishment; she told the court the charged offense was a third degree felony, but the State had alleged enhancements which could make the minimum punishment twenty-five years.[4] *See generally* TEX. PENAL CODE ANN. §§ 12.42(d), 22.01(b) (Vernon Supp. 2009). The trial court asked Leonard if he understood the possible punishment if he were found guilty; although Leonard said it was "hard for me to see myself guilty when I didn't put my hands on" the victim, he acknowledged he could be sent to prison if convicted. What the trial court clearly understood was Leonard's position that he did not believe he was guilty:

THE COURT: Okay. So as I understand it the biggest problem you have is you don't think you're guilty of anything?

[Leonard]: I'm not guilty, Judge.

---

[4]A negotiated plea agreement was eventually reached on punishment, resulting in Leonard's sentence of eighteen years' imprisonment.

8

This concluded the questioning of Leonard, and the defense attorney said, "That was far more lucid than he's been all[] week Judge." The trial court described its perception of Leonard's situation:

> THE COURT: I think he understands it, he's been down this path before. He understands what he's charged with, he understands the repercussions if he's found guilty. His complaint is he doesn't feel that he's guilty.
>
> [Defense Attorney]: Judge --
>
> THE COURT: I don't see that he's taking any medication or anything with regard to mental aspects.
>
> [Defense Attorney]: Judge, and as I stated earlier, I do think he understands the charges and I -- I -- he was able to understand more about the range of punishment with you than he was with me for the last two or three days. As far as everything else, though, that's -- I would still -- you heard him start going into other facts and things that didn't relate to this and that's what I've been dealing with all week and I never was able to get a straight answer on what actually occurred that night and to get him prepared for trial. I mean, I just, that's why I raised the issue. And that's -- I felt it was my obligation to raise that issue because of the problems that I was having communicating with him at that time.
>
> THE COURT: Okay. All right. Based on the conversation that we've had, I'm going to deny the motion and move forward.

No further motions or arguments were urged, and the court proceeded to hear evidence and try the case.

## III.    Informal Inquiry Requirement

Here, trial counsel presented to the trial court a suggestion Leonard was not competent to stand trial. After January 1, 2004, a trial court is required to determine by informal inquiry

9

whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(c). Prior to that time, the statute required the trial court to conduct a formal competency hearing when the evidence raised a bona fide doubt about the defendant's competency to stand trial. *Montoya*, 291 S.W.3d at 424. There was some disagreement as to whether the standard for conducting this informal hearing was changed by the new statute. *Id.* The Texas Court of Criminal Appeals has made it clear that "[*b*]*ona fide* doubt is still the proper standard for determining whether a trial court should conduct an inquiry." *Id.* at 425; *see McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003 (applying 46B.004's predecessor, TEX. CODE CRIM. PROC. ANN. art. 46.02, *repealed by* Act of April 30, 2003, 78th Leg., R.S., ch. 35, §§ 15–17, 2003 Tex. Gen. Laws 57, 72).

There was nothing before the trial court showing "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *Alcott v. State*, 51 S.W.3d 596, 602 (Tex. Crim. App. 2001). Nor can we say, looking at the record as a whole, anything which could constitute a bona fide doubt as to Leonard's competency was presented to the trial court.[5] Whether a bona fide doubt was raised is moot, though, in light of the trial court's questioning of

---

[5]"While the standard of bona fide doubt is easily stated, it is not so easily applied. Each instance must be examined on a case by case basis to determine if a bona fide doubt is raised. Generally, to raise the issue, there must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation. The evidence must cause the court a bona fide doubt that the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or that he lacks an understanding of the proceedings against him." *Mata v. State*, 632 S.W.2d 355, 359 (Tex. Crim. App. [Panel Op.] 1982) (citation omitted).

10

Leonard, which is an "informal inquiry" required by Article 46B.004(c).[6] The trial court established that Leonard understood the offense with which he was charged and that prison time could result from a conviction. Leonard had never been treated for mental illness, and he was not on medication for any mental affliction. The "communication" difficulty complained of by trial counsel seemed more in the nature of disagreements as to the strength of Leonard's defense; Leonard's contention was not that he was incompetent, but that he was not guilty.[7]

So, even if there were some doubt raised by Leonard's counsel, the trial court complied with Article 46B.004(c)'s requirement by conducting an informal inquiry of Leonard. Neither the results of the informal inquiry nor any other evidence supported a finding of incompetency and, therefore, the trial court did not err in failing to order a formal competency trial. TEX. CODE

---

[6]*Cf. Lawrence v. State*, 169 S.W.3d 319, 323–25 (Tex. App.—Fort Worth 2005, pet. ref'd). There, the trial court engaged in an examination with Lawrence over whether he understood the charges; if he had been able to confer with his attorney; and his attorney's opinion on Lawrence's competency; the appellate court referred to this as an "informal inquiry" required by Article 46B.004(c). Nonetheless, there was still no evidence which could be said to compel the trial court to order a competency evaluation of Leonard.

[7]Compare this "inquiry" by the trial court with that done in *Montoya*. Montoya pled guilty without any agreement or bargain as to punishment; the trial court questioned her and established she understood the range of punishment and rights she gave up by pleading guilty without a negotiated plea agreement. She testified she suffered from depression, abused drugs and alcohol, and was on medication for her liver problems. Part of her depression stemmed from her diagnosis of only about six months left to live, but she conceded she could live longer if she abstained from drugs and alcohol. *Montoya*, 291 S.W.3d at 421–22. Montoya's sister testified the defendant was very ill and needed constant care; she was "like a little kid" who had to be dressed and administered medicine. *Id*. at 422. The Texas Court of Criminal Appeals found this was not evidence of "recent severe mental illness, moderate retardation, or truly bizarre acts, and there was no suggestion by Appellant's attorney, the State, or the trial court, all of whom observed Appellant's behavior at the hearing, that Appellant appeared unable to understand the proceedings." *Id.* at 426. The appellate court erred in holding the trial court should have proceeded to Article 46B.004(c)'s informal inquiry.

CRIM. PROC. ANN. art. 46B.005 (Vernon 2006). We find the statutory requirements were fulfilled.

Likewise, no due process violation occurred, as the statute is written in such a way as to incorporate the due process protections necessary. *See McDaniel*, 98 S.W.3d at 709 (due process protections prohibiting conviction of an incompetent person are "built into" former Article 46.02). Finally, for the reasons stated above, we find no abuse of discretion in the trial court's denying Leonard's motion suggesting incompetency and requesting a mental evaluation.

We overrule Leonard's three points of error and affirm the trial court's judgment and sentence.

Jack Carter
Justice

Date Submitted:    September 7, 2010
Date Decided:    September 9, 2010

Do Not Publish