

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-18-00359-CR

THOMAS BRITTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1484193D (Counts I & II), Honorable Robb Catalano, Presiding

May 21, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Thomas Britton (appellant) appeals his convictions for criminal mischief and arson. The convictions arose from vandalism done to a church. Included in the damage were instances of broken stained glass, strewn furniture, and a burned kitchen. Appellant's multiple issues on appeal cover two general areas. One concerns the exclusion of

evidence of his supposed "bizarre" behavior and the other involves his competency. We affirm.[1]

*Exclusion of Evidence*

Appellant initially contends that the trial court erred in sustaining a particular objection by the State. Defense counsel was cross-examining a witness about his client's change in behavior. Such change began around a month before the incident underlying his prosecution. The witness testified that the "most disturbing" instance of change she saw was appellant walking around with a cell phone "held very closely to his mouth."[2] Defense counsel began to ask another question when the State objected "to [the] relevance to this line of questioning." In response, defense counsel alluded to appellant's "bizarre" behavior and said, "we're trying to determine when it started and if, in fact, [appellant] was at the scene like evidence may or may not indicate, then why." The trial court sustained the objection and allegedly erred in so ruling. We overrule the issue.

To preserve error relating to the impermissible exclusion of evidence, a complainant is obligated to make an offer of proof. That is, error cannot be founded on a ruling that excludes evidence unless a substantial right of the complainant was affected, and the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. *Mays v. State*, 285 S.W.3d 884, 889-90 (Tex. Crim. App. 2009). Here, appellant informed the trial court of why he believed the excluded evidence was relevant. However, he did not inform the court of what the

---

[1] Because this appeal was transferred from the Second Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

[2] Whether it is bizarre to walk around with a cell phone next to one's mouth this day and time is not a topic we need address.

evidence was. *See id.* (stating that an offer of proof "may consist of a concise statement by counsel, or it may be in question-and-answer form"). His burden included the task of proffering, with some degree of specificity, the substantive evidence he intended to present. *Id.* at 890 (discussing *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998)); *accord Kamanga v. State*, 502 S.W.3d 871, 877 (Tex. App.—Fort Worth 2016, pet. ref'd) (stating that if appellant attempts to satisfy the requirement by a concise statement, that statement must include a summary of the evidence to be offered). Having failed in that regard, his purported error went unpreserved. *Mays*, 285 S.W.3d at 889-90; *State v. Viernes*, No. 07-18-00236-CR, 2018 Tex. App. LEXIS 9385, at *5-6 (Tex. App.—Amarillo Nov. 16, 2018, no pet.) (mem. op. not designated for publication) (concluding that the issue was not preserved because the State failed to identify the witness being excluded or the substance of his testimony).

*Competency to Stand Trial*

Next, we address appellant's competency issues. He contends that:

> [t]he trial court erred in not conducting a hearing on Appellant's competency to stand trial in accordance with article 46B.004 of the Texas Code of Criminal Procedure. The trial court also erred in not impaneling a jury to determine Appellant's competency in accordance with article 46B.005(b) of the Texas Code of Criminal Procedure. Finally, the trial court violated Appellant's federal and state due process rights by failing to inquire into his competency to stand trial.

We interpret the contention as a multi-tiered attack. The first tier encompasses the trial court's purported failure to *sua sponte* undertake an informal inquiry into appellant's competency to stand trial. The second level concerns a *sua sponte* failure to convene a jury trial to formally adjudicate competence once an informal inquiry was completed. And,

3

because neither occurred, he allegedly was denied his right to due process.  We overrule the issue.

Our analysis begins with the observation that a defendant is presumed to be competent to stand trial until proven otherwise by a preponderance of the evidence.  TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2018).  Furthermore, incompetency arises when the defendant lacks 1) the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or 2) a rational as well as factual understanding of the proceedings against him.  *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018).

Next, either a party or the trial court, *sua sponte*, may suggest that a defendant is incompetent.  TEX. CODE CRIM. PROC. ANN. art. 46B.004(a) & (b).  Yet, "[i]f evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court **on its own motion shall** suggest that the defendant may be incompetent to stand trial."  *Id.* art. 46B.004(b) (emphasis added); *accord Staples v. State*, No. 05-18-00177-CR, 2018 Tex. App. LEXIS 10096, at *3 (Tex. App—Dallas Dec. 7, 2018, no pet.) (mem. op., not designated for publication) (stating that the initial inquiry is informal and is required "only if evidence suggesting incompetency comes to the trial court's attention"). And, "[o]n suggestion that the defendant may be incompetent," then the court must undertake an informal inquiry to assess whether there is some evidence from any source that would support a finding of incompetency.  *Id.* art. 46B.004(c).  That inquiry may consist of little more than the trial court posing questions to both the defendant and/or defense counsel.  *Staples v. State*, 2018 Tex. App. LEXIS 10096, at *21; *White v. State*, No. 02-12-00087-CR, 2013 Tex. App. LEXIS 10369, at *4 (Tex. App.—Fort Worth Aug.

15, 2013, no pet.) (per curiam) (mem. op., not designated for publication); *Coyt-Sowells v. State*, No. 14-11-00986-CR, 2013 Tex. App. LEXIS 4612, at *3 (Tex. App.—Houston [14th Dist.] Apr. 11, 2013, no pet.) (mem. op., not designated for publication). Exhaustive inquisitions are unnecessary. *White,* 2013 Tex. App. LEXIS 10369, at *4; *Coyt-Sowells,* 2013 Tex. App. LEXIS 4612, at *3.

In the event an informal inquiry reveals "some evidence" of incompetency, then the issue undergoes further analysis via formal inquiry or jury trial. *Boyett*, 545 S.W.3d at 563. "Some evidence" means more than a scintilla from which one may rationally deem the accused incompetent. *Id.* at 563-64. That is, there must be some evidence from which it may rationally be inferred 1) that the defendant suffers some degree of debilitating mental illness, 2) that he obstinately refuses to cooperate with counsel to his own apparent detriment, ***and*** 3) that his mental illness is what fuels his obstinacy. *Id.* at 564. And, when assessing whether such a quantum exists, the trial court only considers evidence of incompetency; evidence of competency is ignored. *Id.* We finally note various observations made by our Court of Criminal Appeals in discussing these three components. As it said in *Boyett*, it "is not enough to present evidence of either a defendant's mental illness alone or his refusal to cooperate with counsel—rather, there must be some evidence indicating that the defendant's refusal to rationally engage with counsel is caused by his mental illness." *Boyett*, 545 S.W.3d at 564*.* Nor is it enough if there is some evidence of 1) mental illness without accompanying evidence from which one may reasonably infer that the defendant's mental illness renders him incapable of consulting rationally with counsel, 2) refusal to cooperate with counsel without evidence that the obstinance is fueled by mental illness, or 3) mental illness and obstinance but no

rational basis to infer that the latter is the product of the former. *Turner v. State*, 422 S.W.3d 676, 696 (Tex. Crim. App. 2013).

Here, the trial court at least twice ordered appellant to undergo mental examination by an expert to assess appellant's competency. The most recent evaluation occurred several days before trial began. When the parties appeared at trial to select a jury, the trial court asked counsel for appellant whether his client was competent. Defense counsel answered: "According to Dr. Norman, yes." At the very least, those examinations satisfied the definition of an informal inquiry into appellant's competence. Yet, appellant believed himself entitled to another informal inquiry once he appeared on the witness stand to testify on his own behalf during the guilt / innocence phase of the trial. When doing so, he uttered various statements allegedly suggesting incompetence. Those statements consisted of replies touching upon his military background, reasons for being at the church, and attitude toward the prosecutor. We allude to them now.

Appellant was once a United States Marine who believed that "[o]nce a Marine, always a Marine." So, continuing to be a Marine, he told his attorney during direct examination that he could "not confirm or deny" how long he was a Marine.[3]

As one still in the Marines, he also felt a continuing obligation to thwart terrorism. So, when asked by his defense attorney why he was at the church on the day of the vandalism, he indicated it was to encounter a radical who intended to shoot police and "to fire a warning shot across the bough [sic] of these rogue elements in church and state that we are heading towards genocide." So too did he explain that his actions were justifiable because "[i]t was [his] duty to save . . . fellow citizens from . . . ego maniacs

---

[3] Eventually, appellant conceded that he was in the Marine Corps for 3.5 years.

[sic]." "To protect the innocent from slaughter is duty, whether or not people understand or not," he continued.

This theme about remaining a Marine and, therefore, obligated to protect "fellow citizens" continued during the State's effort to cross-examine him. Appellant felt that the prosecutor was being rude, unkind, bullying, and badgering. And, characterizing himself as "a prisoner of war," he threatened to invoke his rights under the "Geneva Convention" and only provide his name, rank, and serial number if the badgering did not stop.

The foregoing litany of answers provided the basis for his argument on appeal. Their tenor constituted some evidence of incompetence, in his view.

Again, one is incompetent to stand trial when unable to consult with his counsel with a reasonable degree of rational understanding or when he lacks a rational or factual understanding of the proceedings against the person. Implicit in these tests is a combination of mental illness and obstinance or inability to cooperate with defense counsel due to that illness, as indicated in *Boyett*. In viewing the aforementioned litany of answers, the trial court reasonably could have viewed them as evidence of only one of the two *Boyett* elements. That is, it could have viewed them as some evidence of mental illness.

That appellant believed his mantra of "once a marine, always a marine" required him to engage in destructive behavior within the church may be irrational and derivative of mental illness. And, the trial court could well have deemed it so. On the other hand, the trial court was privy to appellant's demeanor during questioning and his answers to the questions propounded by his attorney. It could have viewed that demeanor and those answers as depicting someone quite capable of articulating beliefs and explaining the

reasons underlying his actions. It could have viewed them as illustrating a general understanding of the questions being posed to him by defense counsel, a willingness to answer them, and an ability to formulate answers. This differs greatly from the situation in *Turner* wherein Turner refused to cooperate with defense counsel and believed counsel to be acting against his (Turner's) interests. Here, appellant even characterized his attorney as a "good wing man."[4]

We must remember that mental illness without evidence of obstinance or an inability to consult rationally with counsel falls short of incompetence, per *Turner*. Appellant was able and willing to cooperate with his attorney, or so the trial court could have reasonably concluded, despite potentially suffering from a mental illness. Indeed, there is a difference between uttering answers which could be viewed as irrationally founded and uttering answers or engaging in conduct depicting an inability to rationally consult with legal counsel. *See Ross v. State*, 133 S.W.3d 618, 629 (Tex. Crim. App. 2004) (observing that "[a]ppellant's statements to his mother and to co-counsel 'which suggest some irrationality' and appellant not wanting to have witnesses called on his behalf at the punishment phase do not necessarily show appellant's inability to rationally consult with his lawyers or to understand the proceedings against him"). The former is not necessarily evidence of incompetence while the latter is. So, while appellant's reasons for doing what he did in the church building may be irrational to someone hearing them, their lacking rational basis does not equate an inability to consult with counsel in a rational way. Given this and because a "trial court's first-hand, factual assessment of a

---

[4] This happened when appellant investigated the possibility of representing himself with the aid of trial counsel. He decided against pursuing the option once the trial court questioned him about it. Yet, even in the give-and-take between the trial court and appellant as the option was explored, appellant illustrated no hostility toward or refusal to cooperate with his attorney.

defendant's competency is entitled to great deference on appeal," *Staples*, 2018 Tex. App. LEXIS 10096, at *3, we cannot say that the trial court abused its discretion in forgoing a *sua sponte,* yet, informal inquiry into appellant's competency.[5] *See Alexander v. State,* No.13-96-505-CR, 1997 Tex. App. LEXIS 6131, at *12-13 (Tex. App.—Corpus Christi Nov. 26, 1997, pet. ref'd) (not designated for publication) (wherein appellant's ability to communicate articulately, coherently, and responsively with those around him despite having an alleged mental illness were factors indicative of competence to stand trial).

The same is true of forgoing a formal trial on competency. We find no evidence of a refusal to cooperate with defense counsel due to a mental illness. So, neither *Turner* nor *Boyett* mandated a subsequent, formal adjudication of appellant's competency. And, this leads us to conclude that appellant was not denied due process because those additional proceedings were not undertaken.

The judgments of conviction are affirmed.

Brian Quinn
Chief Justice

Do not publish.

---

[5] A trial court's decision whether or not to undertake an informal inquiry is reviewed under the standard of abused discretion. *Abushanab v. State*, No. 10-16-00220-CR, 2017 Tex. App. LEXIS 5947, at *2 (Tex. App.—Waco June 28, 2017, pet. ref'd) (mem. op., not designated for publication); *Lawrence v. State*, 169 S.W.3d 319, 322 (Tex. App.—Fort Worth 2005, pet. ref'd). And, discretion is abused when the decision falls outside the zone of reasonable disagreement. *Devoe v. State,* 354 S.W.3d 457 (Tex. Crim. App. 2011).